# ROBBINS GELLER
# RUDMAN & DOWD LLP

| | | | | |
|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Jessica T. Shinnefield
jshinnefield@rgrdlaw.com

January 21, 2017

VIA ECF

The Honorable Alvin K. Hellerstein
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan, United States Courthouse
500 Pearl Street
New York, NY 10007-1581

      Re:    *In re American Realty Capital Properties, Inc. Litigation*
               No. 1:15-mc-00040-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

      We write on behalf of the parties to the Class Action pursuant to Your Honor's Individual Practice Rule 2.E.[1]  The parties have held multiple teleconferences in October, November and December 2016 and January 2017 and engaged in good faith discussions on an ongoing basis to try to resolve their differences regarding the discovery disputes described below.  We have reached an impasse, and now seek the Court's resolution of these issues.[2]

      **A.**      **Dispute Regarding the Relevant Time Period for American Realty Capital Properties' Document Production**

            **1.**      **Plaintiffs' Position**

      Plaintiffs' First Omnibus Request for Production of Documents to Defendants American Realty Capital Properties, Inc. ("ARCP") and ARC Properties Operating Partnership L.P. ("Plaintiffs' Requests to ARCP") seeks responsive documents from the period of July 1, 2011 through the date of production, as well as documents concerning events during that period, even

---

[1]    Plaintiffs in the Opt-Out Actions and Derivative Action join in the relief requested.

[2]    Plaintiffs continue to review the document productions made by defendants.  As such, there may be additional issues concerning the productions that arise which Plaintiffs will try to resolve informally before bringing them to the Court.  The disputes raised herein, however, concern threshold matters upon which the parties have reached an impasse.

1227976_1

655 West Broadway   Suite 1900   San Diego, CA 92101   Tel 619 231 1058   Fax 619 231 7423   www.rgrdlaw.com

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 2

though generated prior to or subsequent to that period.  Ex. 1 at 11.  Through the meet-and-confer process, Plaintiffs agreed to narrow the relevant period to July 1, 2011 through March 31, 2015 (the "Relevant Period"), including any documents generated outside that timeframe that refer or relate to the Relevant Period.  Ex. 2 at 1.

As reflected in its position below, defendant ARCP stands alone in refusing to search for and produce all responsive, non-privileged documents through March 31, 2015.  Instead, in response to the majority of Plaintiffs' document requests, ARCP has agreed to search for and produce responsive documents only through October 29, 2014.  Ex. 3 at 3-4.  With respect to the communications involving a handful of custodians, ARCP has agreed to search for and produce responsive documents through December 31, 2014.  *Id.*  Neither proposed end date – October 29, 2014 nor December 31, 2014 – is sufficient for the reasons explained below.

ARCP's refusal to produce all responsive documents from the time period of October 30, 2014 through March 31, 2015 is unacceptable, as it will deprive Plaintiffs of many of the documents most relevant to understanding the accounting fraud at the heart of this case.  As the Court may recall, on October 29, 2014, ARCP issued a press release first disclosing that the Company's Audit Committee had conducted a preliminary investigation revealing intentional accounting errors in the Company's financials, thereby rendering them unreliable.  Ex. 4.  ARCP further announced that the Audit Committee's investigation was ongoing, that it had retained independent counsel and forensic experts to assist with the investigation, and that the Company would restate prior financial statements and amend prior periodic filings to the extent required.  *Id.*

It is at this point – the October 29, 2014 disclosure – that ARCP insists it no longer has an obligation to search for and produce responsive documents.[3]  But other events crucial to establishing liability in this case unfolded ***after*** this date.  For example, the Audit Committee's investigation continued and, on December 15, 2014, ARCP announced the resignations of defendants Nicholas Schorsch (Chairman) and David Kay (CEO).  Ex. 5.  On that same date, ARCP further stated that the Audit Committee's investigation into ARCP's financial statements was ongoing, and that it would conclude its investigation and the related restatement of ARCP's financial statements as soon as possible.  *Id.*  It was not until nearly three months later, in March 2015, that ARCP concluded its investigation into the Company's accounting improprieties and ultimately filed restated financials.

---

[3]     Except with respect to communications between a handful of custodians, which ARCP has agreed to extend through December 31, 2014, which also is insufficient.

**Robbins Geller
Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 3

      a.      **The Post-Class Period Documents Plaintiffs Seek Are
Highly Relevant to Their Claims**

ARCP has taken the untenable position that documents created during this crucial time frame – October 29, 2014 through March 31, 2015 – are not relevant to Plaintiffs' claims, and have therefore refused to apply the agreed-upon search terms to documents generated during this time frame. As an initial matter, how can ARCP possibly know that these documents are not relevant when they have not even attempted to search or review them? Moreover, Plaintiffs' preliminary review of documents produced by other defendants in this case affirm that ARCP *was*, in fact, creating documents highly relevant to Plaintiffs' claims during this disputed time period.

Under Rule 26(b)(1), which governs discovery scope and limits, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, documents generated from the period of October 29, 2014 through March 31, 2015 are highly relevant to Plaintiffs' §§11 and 10(b) claims. For example, during this timeframe, as part of its internal investigation and restatement work, the Audit Committee was determining which executives were aware of the accounting fraud and when, which goes directly to defendants' scienter. The Audit Committee and the Company's external accountants were in fact required to investigate how the accounting fraud had been perpetrated, which internal controls had failed, and by what amounts the Company's financials were misstated, all of which bear directly on falsity and scienter. Indeed, a document produced by other defendants from the disputed period confirm that these highly relevant issues were precisely what the Audit Committee was focused on during this period.

Importantly, the Second Circuit has explicitly recognized that post-class period information may be highly relevant to a party's claim. For example, the Second Circuit opined that that "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant," and that "post-class period data may be relevant to determining what a defendant knew or should have known during the class period." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-73 (2d Cir. 2001); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (large writeoff 13 months after the class period, taken together with other allegations, supports a strong inference of defendants' knowledge); *Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000) (same).

Following the Second Circuit's clear ruling that post-class period information may be relevant to a party's claims, district courts within this Circuit routinely compel the production of such materials during discovery. *See, e.g.*, *Lightsquared v. Deer & Co.*, No. 13 Civ. 8157 (RMB) (JCF), 2015 WL 8675377 (S.D.N.Y. Dec. 10, 2015) (compelling the production of post-class period documents where plaintiffs established events that occurred after the class period were nevertheless relevant to establishing their claims); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*,

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 4

No. 12 Civ. 1579 (HB) (JoF), 2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) (allowing discovery as to documents that post-date relevant transaction on grounds that such documents may retrospectively analyze facts relevant to claims at issue); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230 (LMM), 2005 WL 742617, at *3 (S.D.N.Y. Mar. 18, 2005) (compelling the production of documents created outside the class period on the basis that "a time-frame for discovering defendants' knowledge of facts at issue must be sufficiently broad to reveal evidence of the facts as well as evidence of where defendants learned those facts"). Based on this same legal authority, ARCP should also produce documents that refer or relate to the Relevant Period, even if they were prepared after the end date of that period.

The Court's ruling in *In re Vivendi Univ. S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 181 (S.D.N.Y. 2003), is particularly instructive here. In that case, defendants claimed that post-class period news articles were not relevant to establish whether they were aware of the alleged misconduct at the time they made the statements at issue. Judge Baer "declin[ed] to adopt defendants' reasoning," stating: "[t]o accept defendants' reasoning, I should reward them for their successful concealment of their wrongdoing, which for the most part did not come to light until those in control of Vivendi  resigned and lost the ability to further conceal the true extent of Vivendi's  financial woes." Here too, the full magnitude of defendants' accounting fraud was not revealed until after the Class Period, including when those who perpetrated the fraud – the Company's Chairman, CEO, CFO and CAO – were terminated or forced to resign. And it was after the Class Period, in March 2015, that ARCP's Audit Committee reported the results of its investigation and filed the Company's financial restatement. Thus, post-class period documents, such as those pertaining to the Audit Committee's investigation and the Company's financial restatement – which were being generated at least through March 2015 when the investigation concluded and the restatement was filed – are directly relevant to Plaintiffs' claims and should therefore be produced.

Given the high importance of documents created during this disputed period, ARCP's burden argument fails.[4] As a threshold matter, in a case of this magnitude, ARCP's claimed burden of having to review an additional 32,000 documents in not heavy. Indeed, ***Plaintiffs*** in this action have already ***produced*** more than 50,000 documents. Nor does the fact that ARCP has already produced two million documents in this action somehow relieve ARCP of its obligation to produce

---

[4] The cases ARCP cites in support of its burden argument are not persuasive, as in each of those cases, unlike here, the relevance of the documents sought was minimal. *See, e.g.*, *In re IBM Corp Sec. Litig.*, 163 F.3d 102, 111 (2d Cir. 1998) (information sought was "minimally" relevant); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126(JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) (requests had "'marginal utility'"); *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) (same). Citations and footnotes are omitted and emphasis is added unless otherwise noted.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 5

*other* documents that are also highly relevant and directly responsive to Plaintiffs' requests. Tellingly, defendants cite no authority that says otherwise.

> **b.**    **Many, If Not All, of the Post-Class Period Documents Likely Are Not Privileged**

As its fallback position, ARCP has made the blanket assertion that many of the documents prepared during the disputed period (*i.e.*, those that relate to the Audit Committee's investigation or the Company's restatement of its financials) would nevertheless be shielded from discovery by the attorney-client privilege and/or attorney work product doctrine.  Plaintiffs disagree with this contention as a matter of law, and also point out that ARCP's privilege assertion is made blindly, as ARCP has refused to even *search* the documents created during the disputed time frame, let alone log the withheld documents on a privilege log.

ARCP's position does not comport with the law. While it is possible that **some** of the documents generated during the Audit Committee investigation and the preparation of the restatement are potentially protected – if ARCP meets its burden of showing that they contained legal advice from counsel (attorney-client privilege) or were prepared because of anticipated litigation (work product) – the vast majority of the documents at issue were created for business purposes and would have been created irrespective of anticipated litigation (*e.g.*, to restate the Company's financials so they were accurate and could be publicly relied upon; to correct glaring deficiencies in the Company's internal controls; and to determine whether Company employees had engaged in unethical practices and should be terminated).  Moreover, ARCP waived any potentially applicable privilege or protection by disclosing the results of its Audit Committee investigation and restatement work to the Company's independent auditors Grant Thornton ("GT").

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The party asserting the privilege bears the "heavy burden of establishing its applicability" (*In re Grand Jury Subpoena*, 510 F.3d 180, 183 (2d Cir. 2007)), a "burden not 'discharged by mere conclusory or ipse dixit assertions.'"  *In re Grand Jury Subpoena*, 750 F.2d 223, 225 (2d Cir. 1984). Courts "'construe the privilege narrowly because it renders relevant information undiscoverable.'" *Mejia*, 655 F.3d at 132.

ARCP has certainly failed to make any such showing.  Many of the documents generated as part of the Company's financial restatement and the Audit Committee's investigation likely do not contain advice to ARCP from its legal counsel.  Rather, many of the responsive communications generated during the disputed period are likely non-privileged communications; for example, communications between ARCP's Audit Committee and ARCP's auditors (GT), communications

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 6

among Audit Committee members, and communications among ARCP non-legal employees who were involved in preparing the restatement. The attorney-client privilege affords no protection to such materials, and they should therefore be produced. Moreover, to the extent ARCP appropriately withholds a small subset of these materials because they actually do contain legal advice from counsel, these documents must be included on a privilege log so Plaintiffs can test the validity of the attorney-client privilege claims being asserted.

Nor are many of the relevant documents generated during the disputed period likely protected by the work product doctrine. The work product doctrine is codified by Federal Rule of Civil Procedure 26(b)(3), which provides "that documents 'prepared in anticipation of litigation or for trial' are discoverable only upon a showing of substantial need of the materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998). The Second Circuit has made clear that work product protection does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation." *Adlman,* 134 F.3d at 1202; *Allied Irish Banks, p.l.c. v. Bank of Am., N.A*., 240 F.R.D. 96, 106 (S.D.N.Y. 2007). In making a determination, a court must ask "not merely whether [the party invoking the privilege] contemplated litigation when it generated the materials at issue, but rather whether these materials 'would have been prepared in essentially similar form irrespective of litigation.'" *Id*. at 106. Importantly, the burden rests on the party advocating work product protection to make this showing (*i.e.*, to show what it would have done differently if there were no threat of litigation). *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 395-96 (S.D.N.Y. 2015).

Here, ARCP has failed to establish that its Audit Committee would not have conducted a substantially similar investigation (and generated similar documents) or that the Company would not have performed the audit work necessary to restate its financials had ARCP never anticipated litigation. *Adlman*, 134 F.3d at 1202; *Wultz*, 304 F.R.D. at 395 (determining whether investigatory materials are protected by the work product doctrine "'requires us to consider what "would have" happened had there been no litigation threat – that is, whether [the Company] "would have" generated these documents if it were acting solely for its' non-litigation purposes"); *see also Allied Irish Banks*, 240 F.R.D. at 106 (in context of internal investigation, the court must look at whether the company "'would have' generated these documents if it were acting solely for its 'business-related purposes'").

Though Plaintiffs do not bear the burden on this issue, there is no doubt that ARCP's Audit Committee would have conducted an internal investigation – irrespective of the prospect of litigation – in order to determine the culpable parties, to understand how the fraud was perpetrated, and to implement appropriate internal controls to ensure no further fraudulent conduct occurred.

**Robbins Geller
Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 7

*See, e.g.*, *Allied Irish Banks*, 240 F.R.D. 96 (affording no work product protection to materials generated during an internal company investigation where the purpose of the investigation was to "'address culpability, accountability, control systems and organizational issues'"). The Audit Committee said as much when it announced the internal investigation, telling investors: "[t]he accounting issues are unacceptable and we are taking the personnel and other actions necessary to ensure this does not happen again." Ex. 4.

As the court in *Allied Irish Banks* noted: "the fact that the investigation was announced to the press demonstrates that there were critical public accountability concerns that motivated the commissioning of the Report and, as a result, the underlying investigatory documents." 240 F.R.D. at 107. The court further explained: "[h]aving just discovered a major fraud resulting in a loss of millions of dollars, [the company] needed to reassure the public that 'the group's underlying business and profitability momentum is not impaired by this one-off blow.'" As in *Allied Irish Banks*, ARCP's Audit Committee's investigation, which the Company publicly touted, served the vital business purpose of reassuring investors and allaying their justified concerns about the Company's integrity, transparency, and financial viability, and therefore would have been conducted even had no litigation been anticipated.

Nor can ARCP credibly assert that the materials prepared in connection with the Company's financial restatement would not have been generated irrespective of the prospect of litigation.[5] Indeed, such an assertion would be absurd given that ARCP was **required** to restate its materially misstated financials to ensure that they were accurate and could be relied upon. *See, e.g.*, ASC 250-10 ("Any error in the financial statements of a prior period discovered after the financial statements are issued . . . shall be reported as an error correction, by restating the prior-period financial statements."). Thus, because documents pertaining to the Audit Committee investigation and restatement would have been created in substantially similar form irrespective of the prospect of litigation, under the Second Circuit test, these materials are not work product and should be produced.

---

[5]   The cases defendants cite are inapposite, as in each of those cases, unlike here, declarations were submitted or testimony was given explicitly detailing how the documents at issue would have been prepared differently but for the prospect of litigation. *See Patel v. L-3 Commc'ns Holdings, Inc.*, No. 14-cv-6038 (VEC), 2016 WL 4030704, at *3 (S.D.N.Y. July 25, 2016) (attorneys "attested" that they "would not have conducted the review in the manner they did in absence of anticipated litigation"); *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MD-01695 (CM)(GAY), 2007 WL 724555, at *2 (S.D.N.Y. Mar. 9, 2007) (attorney submitted declaration explaining that documents would not have been prepared in a substantially similar form absent litigation). In the absence of such detailed attestations, as here, courts routinely refuse to afford work product protection. *See, e.g.*, *Allied Irish Banks*, 240 F.R.D. at 107; *Wultz*, 304 F.R.D. at 396.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 8

Finally, even if ARCP's materials relating to its internal investigation were initially protected by the attorney-client privilege or work product doctrine, ARCP waived these protections by sharing these materials with its independent auditor, GT. The present factual scenario is analogous to the situation addressed in *In re Willkie Farr & Gallagher*, No. M8-85 (JSM), 1997 U.S. Dist. LEXIS 2927, at *6 (S.D.N.Y. Mar. 14, 1997). In *Willkie Farr*, defendant corporation Sensormatic hired the law firm of Willkie Farr & Gallagher to conduct a comprehensive investigation regarding alleged improprieties with the company's accounting practices. The corporation also hired its outside accounting firm, Ernst & Young, to aid in the investigation. However, Ernst & Young refused to provide an unqualified audit opinion unless it was provided with unrestricted access to the results of the law firm's investigation. 1997 U.S. Dist. LEXIS 2927, at *2-*3. Judge Martin held that the defendant company waived its privilege as to those documents that were turned over to the accountants in order to get an unqualified audit opinion, explaining:

> Once it became clear [to Sensormatic], however, that the cost of that confidentiality was the inability to get from Ernst & Young an unqualified audit opinion, Sensormatic made a strategic decision to waive the privilege. Once the Audit Committee disclosed to Ernst & Young the substantive and detailed results of the Willkie investigation, including paraphrased statements of what Sensormatic employees had stated in confidence to Willkie attorneys, Sensormatic waived its privilege.

*Id.* at *7-*8; *see also Medinol, Ltd., v. Boston Sci. Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002) (Hellerstein, J.) (holding that the defendant corporation waived its work product protection over certain internal materials by providing this information to its independent auditor).

Here, though the Audit Committee's counsel, Weil Gotshal, had retained Ernst & Young to act as forensic accountants on the engagement, it repeatedly shared information relating to the investigation with ARCP's outside auditors, GT, which was responsible for performing the restatement work. The disclosure of these investigation materials to GT waived any privilege that potentially applied.

### 2.    Defendant ARCP's Position

Plaintiffs' claim that ARCP has refused to search or produce documents after the proposed class period ended on October 29, 2014 (the "Class Period") is simply incorrect. As set forth below, ARCP has produced numerous post-Class Period documents, and, moreover, Plaintiffs have received documents for numerous custodians – including Nicholas Schorsch and Brian Block – through March 31, 2015 from AR Capital (which has custody of Schorsch's and Block's emails). ARCP has refused to conduct **additional** searches, particularly for the period January 1, 2015 through March 31, 2015, because the additional burden on ARCP outweighs any likely benefit to

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 9

Plaintiffs.   By December 31, 2014, every individual management defendant alleged to have engaged in wrongdoing had left ARCP, and Plaintiffs have not alleged any wrongful conduct or concealment after the close of the Class Period.   Nor is there any allegation that ARCP's restatement filed on March 2, 2015 (nearly a month *before* the end of the period for which Plaintiffs now seek documents) contains any inaccuracies.   Given the fact that the Audit Committee's investigation was ongoing throughout the period after ARCP's October 29, 2014 disclosure, and the present litigation commenced on October 30, 2014, a significant portion of the documents will be protected by the attorney-client privilege or work product doctrine and would not be produced in any event.   Thus, the minimal likely benefit (and relevance) of documents after the Class Period which have not already been produced is outweighed by the additional burden in reviewing and producing the documents, which would require ARCP to review an additional 280,000 pages.   Such a review would be particularly burdensome in light of Plaintiffs' request for a privilege log for these documents.   Finally, the Court should take into account the fact that ARCP has already produced **2,269,963** pages to Plaintiffs, further demonstrating that Plaintiffs' request is disproportionate to the needs of the case.   Thus, the Court should deny Plaintiffs' request that ARCP conduct additional searches for the October 29, 2014 to March 31, 2015 period.

   a.   **Documents Produced to Date**

ARCP has produced the following documents for the time period October 29, 2014 through December 31, 2014:

- *All* non-privileged communications in its possession (without search term limitations) between and among Nicholas Schorsch, Brian Block, Lisa McAlister, David Kay and Audit Committee members from January 1, 2013 through **December 31, 2014**.[6]

- *All* non-privileged communications from July 1, 2011 through **December 31, 2014** between any ARCP employee and any employee of ARCP's former auditor, Grant Thornton, LLP.

- Electronic communications relating to AFFO guidance from the files of 15 custodians according to search terms disclosed to Plaintiffs for the period July 1, 2011 **through December 31, 2014**.

Further, Plaintiffs have received the following documents through March 31, 2015:

---

[6]   ARCP notes that Schorsch, Block, McAlister and Kay all left ARCP by December 31, 2014.   ARCP has also produced numerous documents for these individuals prior to January 1, 2013 that are not listed here.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 10

- Emails for custodians Nicholas Schorsch and Brian Block **through March 31, 2015**, produced by AR Capital.[7]

- Non-privileged emails between ARCP and Grant Thornton employees **through March 31, 2015**.[8]

In sum, ARCP and other defendants have already made substantial productions of documents for many custodians through March 31, 2015.

**b.      Plaintiffs' Request for Post-Class Period Documents Is Disproportionate to the Needs of the Case**

Despite receiving more than two million pages of documents from ARCP alone, Plaintiffs assert that they need more because post-Class Period documents *might* be relevant. "However, relevance is not the only factor in determining the scope of discovery: [the court] must also consider the burden and expense of allowing plaintiffs' proposal[.]" *In re IBM Corp. Sec. Litig.*, 1993 U.S. Dist. LEXIS 20041, at *3 (S.D.N.Y. Dec. 8, 1993) (denying additional discovery even though "[w]e cannot, of course, deny the possibility that some of the proposed discovery might produce relevant evidence or lead to relevant evidence").

These proportionality principles are codified in the recently amended Rule 26(b)(1), under which parties may obtain discovery of non-privileged documents only if they are "relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, *and whether the burden or expense of the proposed discovery outweighs its likely benefit*." Fed. R. Civ. P. 26(b)(1) (emphasis added). As noted by the Federal Rules Advisory Committee, these

---

[7]     It was determined that AR Capital, which had previously externally managed ARCP, had the most complete email files for Schorsch and Block, and would therefore produce documents from those custodians' electronic files, rather than ARCP producing duplicative documents. ARCP notes, however, that this does not mean ARCP did not produce emails for Schorsch and Block: ARCP produced numerous such documents to the SEC and, in turn, provided its entire SEC production to Plaintiffs in this litigation.

[8]     For purposes of assessing privilege and determining which documents may be produced by Grant Thornton to Plaintiffs, Grant Thornton provided 7,338 documents to ARCP for review. These documents included emails between Grant Thornton and (1) ARCP; (2) the Audit Committee's outside counsel in connection with the investigation, Weil Gotshal & Manges LLP ("Weil"); and/or (3) the accounting firm hired by the Audit Committee to assist with the investigation, Ernst & Young LLP ("Ernst & Young"). Based on the preliminary results of this review, ARCP anticipates that only approximately 672 of these documents will be withheld due to privilege, resulting in the production of more than 6,600 additional documents to Plaintiffs for the period September 7, 2014 through March 31, 2015.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 11

"proportionality factors" were recently relocated to Rule 26(b)(1) to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to analyze proportionality. Advisory Comm. Notes (2015). Accordingly, courts routinely deny discovery requests that would place a significant burden on the producing party and would result in discovery of minimal additional value to the requesting party, especially where extensive discovery has already been provided. *See In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 111 (2d Cir. 1998) (affirming district court's denial of plaintiffs' motion to compel additional discovery "[g]iven that the information sought was only minimally relevant to plaintiffs' allegations that IBM made false statements during the class period and the definite burden that compliance with such requests would place on IBM"); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality requirement means [the requests'] 'marginal utility' must also be considered"); *Vaigasi v. Solow Management Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) ("Proportionality focuses in the marginal utility of the discovery sought").

Plaintiffs' request for post-Class Period documents fails the proportionality test. The likely additional benefit that Plaintiffs would gain from receiving post-Class Period documents that they have not already received is minimal, given the extensive discovery they have already obtained, and outweighed by the significant burden that would be placed on ARCP in reviewing an additional 280,000 pages of documents.

### (1)    Producing Post-Class Period Documents Would Be Unduly Burdensome

Requiring ARCP to conduct additional document review for the period through March 31, 2015 would result in significant additional burden on ARCP. Applying the search terms ARCP agreed to for prior periods to post-Class Period documents, even excluding the documents already reviewed and produced, would require ARCP to review ***more than 32,000 additional documents, totaling over 280,000 pages***. The burden on ARCP conducting additional review during this period is amplified because many of the post-Class Period documents will be protected by the attorney-client privilege and the work product doctrine. As discussed in ARCP's public disclosures, the Audit Committee of ARCP's Board of Directors commenced an investigation into concerns regarding accounting practices and other matters that were first reported to it on September 7, 2014. *See* ARCP, Current Report (Form 8-K) (Oct. 29, 2014), https://www.sec.gov/Archives/ edgar/data/1507385/000114420414063458/v392439_8k.htm. The Audit Committee promptly initiated an investigation, which was conducted with the assistance of independent counsel. *Id.* On October 29, 2014, ARCP announced the Audit Committee's conclusion on the preliminary findings of its investigation, and that it was continuing its review for earlier time periods. *Id.* The first

Robbins Geller
Rudman & Dowd LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 12

putative class action complaint against ARCP was filed one day later.[9]  ARCP restated its financial results for certain periods on March 2, 2015.  *See* ARCP, Annual Report (Form 10-K/A) (Mar. 2, 2015),   https://www.sec.gov/Archives/edgar/data/1507385/000119312515071464/d880830d10ka. htm.[10]  As a result, a substantial number of documents from after the Class Period ended on October 29, 2014 will be protected by the attorney-client privilege and work product doctrine.

Plaintiffs' assertion that ARCP "stands alone" in refusing to produce post-Class Period misses the mark: no other defendant with any sizeable document production was the subject of an Audit Committee investigation.  Moreover, Plaintiffs' suggestion that "the vast majority" of ARCP's post-Class Period documents are likely not protected by the work product doctrine because "there is no doubt that ARCP's Audit Committee would have conducted an internal investigation – irrespective of the prospect of litigation" is baseless and contrary to the law.  As Judge Caproni recently held in denying a similar request by plaintiffs for documents generated in connection with an investigation in which the defendant restated its financial statements, "[a]lthough [the Company] may have had independent obligations or business reasons to seek to assure itself that the accounting problems discovered . . . that fact does not alter the reality that the review was conducted as it was in large part because of expected litigation."  *L-3 Commc'ns Holdings, Inc.*, 2016 WL 4030704, at *3 (S.D.N.Y. July 25, 2016); *see also In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 724555, at *2 (S.D.N.Y. Mar. 9, 2007) (where restatement might be "required" the work of outside counsel and forensic accountant was nevertheless protected work product); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (work product doctrine will apply "regardless of whether an internal investigation was conducted pursuant to a company compliance program required by statute or regulation"), *cert. denied sub nom. U.S. ex rel. Barko v. Kellogg Brown & Root, Inc.*, 135 S. Ct. 1163 (2015).[11]

---

[9]     *See* Compl., *Ciraulu v. Am. Realty Capital Props., Inc.*, No. 14-cv-8659, Dkt. No. 2 (S.D.N.Y. Oct. 30, 2014).

[10]     Given that ARCP's restatement occurred on March 2, 2015, Plaintiffs' request for documents through March 31, 2015 is completely arbitrary and nothing more than a fishing expedition.

[11]     Plaintiffs' reliance on *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96 (S.D.N.Y. 2007), is misplaced.  In *Allied Irish Banks* the relevant materials were produced by a non-attorney who was not supervised or directed by in-house or external counsel, whose work was limited in scope to business concerns, and the final product of those efforts was a document exclusively intended to inspire consumer confidence.  *Id.* at 100-05.  Two district courts have distinguished *Allied Irish Banks* on these very grounds, demonstrating its inapplicability to the present dispute.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 531 (S.D.N.Y. 2015); *California Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585, 594 n.8 (E.D. Cal. 2012).  Here, as in *In re General Motors*, ARCP "engaged [Weil], a law firm, to provide legal advice" and direct the internal investigation.  *In re Gen. Motors*, 80 F. Supp. 3d at 531.  In these circumstances, the work product doctrine applies.

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 13

Plaintiffs' assertion that ARCP waived work product protection by obtaining information from, or sharing information with, Grant Thornton in connection with the Audit Committee's internal investigation is meritless. In fact, "[a]mong the district courts that have addressed this issue, most have found no waiver" when work product documents are produced to an independent auditor. *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010) (finding no waiver); *see also Vacco v. Harrah's Operating Co*., 2008 WL 4793719, at *6 (N.D.N.Y. Oct. 29, 2008) (no waiver); *Int'l Design Concepts, Inc. v. Saks Inc.*, 2006 WL 1564684, at *2 (S.D.N.Y. June 6, 2006) (no waiver); *Merrill Lynch & Co. v. Allegheny Energy, Inc*., 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (no waiver); *In re Pfizer Inc. Sec. Litig*., 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993) (no waiver).

In any event, Plaintiffs' argument is a red herring, since, as noted above (*see* footnote 8), the communications with Grant Thornton for the period from October 29, 2014 to March 31, 2015 have been reviewed by ARCP, and ARCP is in the process of preparing a privilege log for those documents. Thus, any dispute over waiver of privilege with respect to those communications is premature. ARCP's burden argument does not rest on the small subset of communications with Grant Thornton, but rather the fact that there are numerous other documents subject to attorney-client privilege and work product protection during the post-Class Period, and the presence of those documents enhances ARCP's burden in reviewing additional documents for that period. In that context, and for all the reasons set forth above and below, any likely additional benefit to Plaintiffs in receiving post-Class Period documents is outweighed by the significant burden on ARCP of reviewing over 280,000 additional pages of documents.

### (2)     The Likely Benefit to Plaintiffs of Receiving Post-Class Period Documents from ARCP Is Minimal

The likely additional benefit to Plaintiffs of receiving additional post-Class Period documents, particularly January 1, 2015 through March 31, 2015, is minimal. ARCP has already produced all emails between custodians Schorsch, Block, McAlister and Kay through December 31, 2014, and all of these individuals had left ARCP by December 15, 2014. Plaintiffs also received documents for Schorsch and Block from AR Capital through March 31, 2015. Further, Plaintiffs have received non-privileged communications between ARCP and Grant Thornton through March 31, 2015, which provides sufficient information about the restatement. Given these prior productions, additional searches by ARCP, particularly for the period January 1, 2015 through March 31, 2015 – nearly a month after the restatement was filed – are unlikely to yield significant benefits for Plaintiffs commensurate with ARCP's additional burden.

The cases cited by Plaintiffs in support of their request for post-Class Period documents are readily distinguishable. *In re Vivendi Universal, S.A. Sec. Litig*., 381 F. Supp. 2d 158 (S.D.N.Y.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 14

2003), illustrates the point. Judge Baer required production of post-class period documents based on a claim that defendants were concealing their wrongdoing, which "for the most part did not come to light until those in control of Vivendi resigned and lost the ability to further conceal the true extent of Vivendi's financial woes." *Id*. at 181. Here, by contrast, ARCP and AR Capital *have already produced* all communications of the alleged wrongdoers in control of ARCP – Schorsch, Block, McAlister, and Kay – though December 31, 2014, which is two weeks *after* the last of them resigned. Moreover, Plaintiffs have made no allegation of concealment or that the March 2, 2015 restatement was inaccurate. Thus, Plaintiffs' argument that there could be relevant documents, particularly in the period January 1, 2015 through March 31, 2015, is sheer speculation and unsupported even by the cases they cite.

*****

For these reasons, the likely additional benefit that Plaintiffs would gain from receiving post-Class Period documents is minimal, and outweighed by the significant burden that would be placed on ARCP in reviewing more than 32,000 additional documents, totaling over 280,000 pages. The Court should deny Plaintiffs' request for additional post-Class Period documents.

### B. Dispute with Defendants Concerning the Production of Documents Previously Produced to the Government and Regulatory Agencies

#### 1. Plaintiffs' Position

Defendants AR Capital LLC ("AR Capital") and GT should immediately produce all documents that they produced to government and regulatory entities relating to ARCP. These documents are responsive to Plaintiffs' document requests and highly relevant to Plaintiffs' claims. Further, there is no burden associated with producing the documents that AR Capital and GT already gave to the government regulators. Indeed, defendant ARCP has already produced to Plaintiffs the materials that it provided to government regulators.

By withholding these documents, GT and AR Capital are seeking to re-litigate an issue this Court already decided. At the hearing on September 8, 2016, the Court told AR Capital and GT: "The SEC file should be produced within a week." Ex. 6 at 9:16. The Court continued: "Privilege wasn't declared to the SEC. It's waived." *Id.* at 9:17-18. The Court rejected AR Capital's counsel's complaint that certain documents produced to the SEC and U.S. Attorney's office "go beyond the issues related to ARCP," holding: "***This case is very broad***." *Id.* at 9:21, 10:3. The Court concluded, "I'm not going to fix a date for your production of the SEC file. Production is going to be on a rolling basis. ***One test of your good faith will be how quickly you're going to produce that file***." *Id.* at 10:9-12.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 15

Today – more than four months after the Court ordered AR Capital and GT to produce the documents they provided to the SEC – those defendants continue to withhold a substantial portion of their government production.  GT and AR Capital's dilatory conduct should not be permitted; they should be compelled to produce all communications with and productions to government regulators immediately.

**a.      The Documents Sought Are Responsive to Plaintiffs'
Document Requests**

After the Court ordered defendants to produce the documents they provided the SEC, Plaintiffs issued the following document requests to defendant GT:

- <u>REQUEST NO. 6</u>: Documents and communications with or regarding any government agency, regulatory body or law enforcement agency concerning ARCP, including, but not limited to, the SEC, the U.S. Department of Justice and any U.S. Attorney's Office.  This request includes, without limitation, documents produced to the SEC, and transcripts of testimony to the SEC.

- <u>REQUEST NO. 7</u>: Documents and communications with or concerning regulatory agencies regarding ARCP or Grant Thornton's services for ARCP, including, but not limited to, the Public Company Accounting Oversight Board, the American Institute of Certified Public Accountants and the New York Stock Exchange.

Ex. 7 at 12-13.

Plaintiffs issued a similar document request to AR Capital:

- <u>REQUEST NO. 14</u>:  Documents which you have produced to the SEC, DOJ, or any other federal, state or regulatory agency or entity, in response to any investigation, formal or informal inquiry, or request for information related to ARCP's Restatement, AFFO, accounting manipulations, or OPP, including any third-party documents related to such investigations, and communications relating thereto, including, but not limited to, any subpoenas or *Wells* Notices received.

Ex. 8 at 14-15.

Aside from the fact that the Court has already ordered the defendants to produce these documents, all documents produced to government regulators by AR Capital and GT relating to

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 16

Plaintiffs' claims are responsive to Plaintiffs' document requests.  The subpoenas that AR Capital and GT received from government regulators are likewise responsive to Plaintiffs' document requests and should be immediately produced.

### b.      The Documents Sought Are Relevant

The communications by defendants with government regulators, and the documents produced to those agencies, are directly relevant to Plaintiffs' claims because they "precisely . . . address, and rebut, the same charges."  *See In re Initial Public Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2004 WL 60290, at *2-*3, *5 (S.D.N.Y. Jan. 12, 2004) (holding that there was "no serious doubt" that communications between defendants and the SEC were discoverable, even if the materials contained offers of settlement).

Nor are the claims in this case limited only to the ARCP entity, as defendants pretend.  In fact, all the Schorsch-controlled entities are relevant to Plaintiffs' because: (1) the related parties were a major component of the fraudulent accounting and subsequent restatement; and (2) self-dealing and inappropriate compensation were concealed by the complicated inter-connected web of related parties.  *See, e.g.,* TAC, ¶¶139-142.[12]  These core claims are precisely why the Court rejected AR Capital's assertion that the government inquiries go beyond the issues in this lawsuit.  As the Court recognized, "***This case is very broad***."  Ex. 6 at 10:3.

Nonetheless, GT and AR Capital continue to cling to the false premise that the government inquiry is broader than this lawsuit.  Rather than being forced to blindly rely on AR Capital and GT's irrelevance assertions, Plaintiffs asked AR Capital and GT to provide them with the subpoenas served upon them by any government regulators to see if there indeed were categories of documents produced to those entities that are not relevant to Plaintiffs' claims here.  Ex. 9.  AR Capital and GT both refused to provide information.  Ex. 10.  It is evident from defendants' refusal to produce even subpoenas received from the government that defendants are not concerned about producing irrelevant documents.  Rather, defendants refuse to provide Plaintiffs with the subpoenas they received because the documents sought by the government ***are*** relevant.  Simply put, GT and AR Capital hope to deprive Plaintiffs with discovery that is necessary to afford Plaintiffs a fair opportunity to prepare their case.  Accordingly, this Court should compel GT and AR Capital to produce the documents they previously provided to government regulators.  These are highly relevant to the litigation.

---

[12]   All references to "TAC" refer to the Third Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 312).

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 17

GT and AR Capital claim unpersuasively that Plaintiffs should be satisfied because they performed some sort of unspecified "review" of the documents they produced to unidentified government regulators. This assertion ignores the fact that all documents sought by government regulators – who were investigating the very fraud at issue in this litigation – are relevant to the Plaintiffs' claims. "A party seeking discovery of relevant, nonprivileged documents need not rely on an opposing party's assurance that the documents in question do not contain the information sought. Rather, the party seeking discovery is entitled to obtain the discovery and draw its own conclusions as to the documents' usefulness." *El Badrawi v. Dep't of Homeland Sec.*, 258 F.R.D. 198, 202 (D. Conn. 2009).

Months ago, the Court ordered GT and AR Capital to produce the documents they provided to government regulators. They should be compelled to do so immediately.

### c.     The Production Would Not Impose a Substantial Burden

Finally any costs and expenses associated with producing and collecting documents already produced to government entities already have been incurred and producing those same documents to Plaintiffs will place only the slightest burden on GT and AR Capital. Indeed, courts in this District routinely order defendants to produce documents to plaintiffs that have previously been produced to government agencies in connection with their investigations. *See, e.g.*, *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913 (SAS), 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009) (modifying discovery stay in securities fraud litigation and ordering production of documents previously produced to state and federal prosecutors, finding the burden of production is slight when defendants have "'already found, reviewed and organized the documents'"); *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942 (SAS), 2005 WL 388561, at *2-*4 (S.D.N.Y. Feb. 17, 2005) (same); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (same).

Defendants suggest that they would incur (or have already incurred) a substantial burden because they need to re-review the documents that they already produced to government regulators. But there is no need for defendants to re-review the documents they have already produced. The protective order already available to the litigants in this action renders any confidentiality claim particularly unavailing. In addition, GT and AR Capital "fail to make any meaningful showing as to the sensitivity of the withheld materials" and thus must produce responsive documents in unredacted form. *Brandwynne v. Combe Int'l Ltd.*, No. 98CIV2653(SAS)(MHD), 1998 WL 751657, at *1 (S.D.N.Y. Oct. 28, 1998) (declining to disturb order that denied defense request for permission to redact board minutes to exclude all references to products other than those at issue); *see United States v. Davis*, No. 85 Civ. 6090 (KC), 1988 WL 96843, at *3 (S.D.N.Y. Sept. 13, 1988) (upholding magistrate judge's ruling requiring defendant to produce unredacted copies of

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 18

discovery materials, where defense objection was supported by a "mere blanket averment by an attorney . . . that the redacted information is irrelevant and/or confidential in that it contains proprietary financial information"). The government agencies already have these documents. There is no reason for defendants to re-review them.

Finally, defendants' reliance on a so-called "SOX privilege" to evade their discovery obligations is meritless. First, as even defendants' authority points out, "[T]he privilege *does not* extend to documents from the underlying transaction or work that is the subject of the investigation as such documents are not prepared for the Board." *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *2 (W.D. Mo. Oct. 10, 2012). Thus, any of GT's documents relating to the "underlying transaction or work" investigated by the Public Company Accounting Oversight Board ("PCAOB") must be produced.

Second, missing from defendants' argument is any recognition of the statute's plain language restricting the protection. As one court explained, §105(b)(5)(A)'s "[i]nclusion of the phrase 'specifically for the Board' makes clear that [it] is applicable to only a portion of any information or documents that may derive from, refer to, or relate to a PCAOB inspection." *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2010 WL 4659535, at *4 (N.D. Ill. June 29, 2010). Defendants' construction of the statute "extends interpretation of the provision beyond its plain language and renders meaningless the phrase 'specifically for the Board.'" *Id.* As the court in *Motorola* concluded, "[i]f Congress intended the privilege to protect all materials related to the inspection, the text of the statute would reflect that intention. Instead, the statute limits the protection to materials prepared 'specifically for' the Board." *Id.*

Third, the plain language of the statute does not create a privilege for the subpoenas that the PCAOB may have issued to GT. Rather, the statute protects only "***deliberations*** of the [PCAOB] and its employees and agents." 15 U.S.C. §7215(b)(5)(A). Thus, the Board's internal debates and decisions about an auditor may not be discovered. But only by stretching the definition of "deliberation" to a point of absurdity could it be considered to include subpoenas. Accordingly, Plaintiffs' motion to compel should be granted.

## 2. Defendants' Position

Plaintiffs' motion to compel AR Capital and Grant Thornton to produce all documents they may have produced to regulators regarding ARCP should be denied. Like any other litigant, Plaintiffs here are obligated to determine what categories of information are relevant to their claims and defenses, and to serve discovery requests seeking that information, to which AR Capital and Grant Thornton will respond. In addition, as to Grant Thornton, Plaintiffs' request runs directly afoul of the privilege created by §105(b)(5)(A) of the Sarbanes-Oxley Act of 2002 ("SOX"). 15 U.S.C. §7215.

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 19

Plaintiffs' claim that the Court previously directed AR Capital and Grant Thornton to reproduce all documents they have produced to the government is entirely meritless.  At the September 8, 2016 hearing, counsel for ARCP, not Plaintiffs', verbally requested that documents AR Capital previously produced to the government be produced "on a rolling basis."  Tr. at 9:14. Neither ARCP, AR Capital nor any other party interpreted the colloquy that followed as requiring AR Capital or any other party to produce documents that had previously been produced to regulators. The Court entered a written order on September 8, 2016 memorializing the orders issued at the hearing.  (Dkt. 299.)  That order says nothing whatsoever about prior productions to regulators.  (*Id*.) It was not until the eve of the January 24, 2017 hearing that Plaintiffs first contended otherwise. Plaintiffs' actions following the September 8 conference further undermine their position. Defendants and Plaintiffs have discussed Plaintiffs' discovery requests on numerous occasions over the past several months, both by telephone and through written correspondence.  At no point during the months-long meet and confer process – including in response to AR Capital's and Grant Thornton's objections to their requests for cloned productions – did Plaintiffs express the view that the Court had settled this issue and ordered the documents to be produced.  Indeed, Grant Thornton and AR Capital learned for the first time that Plaintiffs divined this "order" from the September 8, 2016 hearing transcript on the afternoon of January 20, 2017, the Friday before the hearing.  Moreover, the discussion from the September 8th transcript Plaintiffs cite in support of their position contains no mention of Grant Thornton or any production it may have made, much less an order directing Grant Thornton to produce such documents. Plaintiffs have not simply misinterpreted the Court's remarks, they have blatantly mischaracterized them.

AR Capital and Grant Thornton have produced all documents produced to the government and regulatory agencies that concern ARCP, insofar as they concern the disputed issues in this litigation.[13]  Specifically, AR Capital agreed to produce all documents produced to the government and regulatory agencies "that relate to the issues in this litigation."  AR Capital Response to Plaintiffs' First Omnibus Request for Production of Documents, Request No. 14 (Oct. 20, 2016). AR Capital has done so, by reviewing each document in the productions made to government and regulatory agencies and making a determination whether it is related to issues presented in this litigation.  Grant Thornton has produced all of its audit work papers related to ARCP that it

---

[13]   In their letter to the Court, Plaintiffs have narrowed their request to seek "all of the documents concerning ARCP that [AR Capital and Grant Thornton] produced to the government and regulatory agencies."  However, in their discovery conferences with AR Capital and Grant Thornton, Plaintiffs demanded **all** documents that had been previously produced to the government and regulatory agencies.  *See* Letter from D. Wyman to R. Beynon (Nov. 4, 2016) (seeking "entire production previously made to the SEC or other regulators"); Letter from J. Shinnefield to M. Walker (Nov. 22, 2016), at 4 (seeking "all of the documents [Grant Thornton] produced to government and/or regulatory agencies" and all subpoenas).  Plaintiffs should not be permitted to circumvent the Court's meet-and-confer requirements by taking positions never presented to Defendants for the first time in a letter to the Court.  The Court should reject their argument for this reason alone.

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 20

produced to the government or regulators.  In addition, Grant Thornton has produced non-work paper documents responsive to Plaintiffs' requests following the application of search terms to selected custodians, without regard to whether those documents may or may not have been previously produced in other settings.  Letter from M. Walker to J. Shinnefield (Dec. 2, 2016), at 5. Plaintiffs have not challenged those search terms or custodians, which were broadly designed to capture relevant documents related to ARCP.

Putting aside Plaintiffs' mischaracterization of the record, Plaintiffs offer no plausible explanation as to why they would be entitled to a production of documents that "concern ARCP," but do not also relate to disputed issues in this litigation.  The scope of the information relevant to Plaintiffs' claims and defenses in this action, and the scope of documents that may have been sought by government agencies or regulators for entirely different purposes, is not necessarily coextensive.  Indeed, in responding to Plaintiffs' more specific document requests, AR Capital and Grant Thornton have identified and produced documents that they produced to regulators, and also have identified and produced documents they did *not* produce to regulators.  That is because in some respects, the scope of relevant information here is broader than the scope of what was sought by regulators.  AR Capital and Grant Thornton recognize that it would be unreasonable to limit discovery in this case to documents they previously produced to regulators.  But it is equally unreasonable to assume that every document produced to a regulator that concerns ARCP is also relevant to this action.  The scope of documents relevant to this action – concerning a specific time frame and specific accounting and auditing issues as set forth in Plaintiffs' Third Amended Complaint – may in some respects be broader, and may in some respects be narrower, than what was sought by regulators.  Plaintiffs' focus on whether it would burden GT or AR Capital to clone its productions to regulators entirely sidesteps the issue of relevance.

Numerous courts have denied "cloned" or "piggybacking" discovery requests for this reason.  For example, in *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14-Civ. 7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016), the court denied a request for documents produced by the defendant to various governmental regulators.  As in this case, the plaintiffs in *Alaska Electrical* did not argue that the fact that any particular document had been produced was relevant to the case.  *Id.* at *3.  The court rejected plaintiffs' demand, reasoning that plaintiffs' "conclusory discovery claim [was] insufficient to support such an expansive discovery request."  *Id.*  "Plaintiffs may tailor more specific discovery requests detailing the documents or topics requested."  *Id.*

Similarly, in *King County v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011), the court denied a request for documents produced in a government investigation on the grounds that the court had no way of determining from a "cloned discovery" request whether the documents requested were relevant to the case:  "[T]he Court has no method of determining

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 21

which of those documents are relevant, and which are not. . . . Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them – and each category must be relevant to its claims and defenses." *Id.* at *8. Here too, Plaintiffs have failed to make any showing how documents are relevant to its claims and defenses simply because they "concern" ARCP.[14]

Plaintiffs' assertion that there would be minimal burden involved in producing documents previously produced to regulators is unsupported and incorrect. *See Chen v. Ampco Sys. Parking*, No. 08-CV-0422 (JMA), 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) ("Production of all of the discovery [Defendants] produced and received in the state cases would be extremely burdensome."). Grant Thornton, for example, has at great effort and cost already reviewed over a million pages of documents based on agreed-upon search terms and custodians in order to identify non-privileged documents responsive to Plaintiffs' more specific requests—including, as noted, both documents produced to regulators and additional documents as well. AR Capital likewise has expended similar efforts reviewing documents produced to regulators to determine whether they concern the disputed issues in this litigation. Neither Grant Thornton nor AR Capital should be required to re-review documents produced to regulators to identify those additional documents "concerning ARCP" that are not otherwise related to the issues in this litigation. There is no purpose for imposing such a burden here, where extensive review to identify documents responsive to Plaintiffs' other requests has already been performed.

Plaintiffs' request for copies of subpoenas served on AR Capital and Grant Thornton also should be denied. As an initial matter, the fact that AR Capital and Grant Thornton may have received subpoenas from government agencies or regulators is not relevant to any matter at issue in this litigation. Indeed, Plaintiffs do not even attempt to argue that the subpoenas themselves are relevant to any claim or defense. Rather, Plaintiffs assert that they would like to see the subpoenas to "determine for themselves" whether any of the documents called for are "not relevant" to this litigation. But Plaintiffs should be able to determine what categories of documents are relevant to their claims and defenses in this case without reviewing subpoenas served by regulators in other

---

[14]    *See also New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08-CV-5653 (PAC), Dkt. No. 134, at 1-2 (S.D.N.Y. Mar. 2, 2012) (attached hereto as Ex. ARC-E) (denying as overbroad Plaintiffs' request for the production of documents previously produced to the government); *Wollam v. Wright Med. Group, Inc.*, No. 10-CV-03104-DME-BNB, 2011 WL 1899774, at *5 (D. Colo. May 18, 2011) ("sweeping cloned discovery sought by plaintiffs has not been shown to be sufficiently relevant to the claims and defenses in this case and simply reaches too far"); *Midwest Gas Serv., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-Y/G, 2000 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("The plaintiffs in this Cause have not shown that the fact that any particular document was produced by the defendant to the D.O.J. or received by defendant from the D.O.J. is relevant to the subject matter of this Cause. Instead, the plaintiffs are interested in the content of documents . . . [so] counsel must do their own work and request the information they seek directly.").

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 22

contexts and for other purposes. *See, e.g.*, *In re Weatherford Int'l Sec. Litig.*, 11-CV-1646 (LAK) (JCF), 2013 WL 5788687, at *3 (S.D.N.Y. Oct. 28, 2013) (declining to permit discovery into communications with SEC); *In re WorldCom, Inc. Sec. Litig.*, No. 02-CV-3288 (DLC), 2003 WL 22953645, at *7 (S.D.N.Y. Dec. 16, 2003) ("The [requesting parties] are well-represented and can fashion their own document requests without relying upon the government subpoenas.").

What is more, Plaintiffs' request for all documents produced to regulators, as well as their request for subpoenas that may have been issued to Grant Thornton by regulators, calls for information that is clearly privileged under § 105(b)(5)(A) of SOX. As part of SOX, Congress created the Public Company Accounting Oversight Board ("PCAOB" or "Board") and charged it with overseeing the auditors of public companies. Congress determined that confidentiality was imperative to effective oversight, and in particular wanted to shield the oversight process from private litigants who wanted information for lawsuits. *See Accounting Reform and Investor Protection: Hearings Before the S. Comm. on Banking, Hous., and Urban Affairs*, 107th Cong., 2d Sess. (2002) (Statements of Shaun F. O'Malley, Chairman, 2000 Public Oversight Board Panel on Audit Effectiveness; and Charles A. Bowsher, Chairman, Public Oversight Board); *see also* S. Rep. No. 107-205, at 10 (2002).

Accordingly, the SOX privilege provides:

[A]ll documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 104 or with an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal progress) in any proceeding in any Federal or State court or administrative agency . . .

15 U.S.C. § 7215(b)(5)(A).

Contrary to Plaintiffs' suggestion, the Defendants do not assert that the SOX privilege extends to the underlying transaction or work that may have been the subject of investigation, and they do not seek to withhold documents on that basis. However, the SOX privilege protects accounting firms who may be subject to an inspection or investigation from being required to divulge information or responses provided to the PCAOB. This means that the ***fact*** of an inspection or investigation, and the ***fact*** that certain documents were provided to the PCAOB, are privileged. *Bennett v. Sprint Nextel Corp.*, 2012 U.S. Dist. LEXIS 145902, at *6 (W.D. Mo. Oct. 10, 2012); PCAOB Rule 5108 ("Informal inquiries and formal investigations . . . shall be confidential in the hands of the Board."). If Grant Thornton is compelled to comply with Plaintiffs' document requests in this regard, it necessarily will reveal privileged information regarding any potential PCAOB

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 23

inspection or investigation related to Grant Thornton's audits of ARCP and Grant Thornton's responses. For these reasons, Plaintiff's motion to compel should be denied.

### C.    Disputes Concerning AFFO

#### 1.    Plaintiffs' Position

Documents containing the search term "AFFO" are highly relevant to Plaintiffs' claims and should be produced. Defendant AR Capital has refused to search for and review documents that contain the term "AFFO," unless those documents also contain the term ARCP (or some variation thereof). *See* Ex. 11. However, as Plaintiffs explained to AR Capital during several meet and confers, documents discussing AFFO are directly relevant to Plaintiffs' claims, even if ARCP is not specifically mentioned in the document. In fact, the main concern expressed by Plaintiffs was that AR Capital's search protocol would not capture all relevant documents that concern or discuss AFFO if the term ARCP, or some variation of it, was not also present in the document. *See* Ex. 12.

As the Court may recall, ARCP materially misstated its AFFO throughout the Class Period, and AFFO was the key financial metric the Company restated in March 2015. TAC, ¶¶48, 61. While there is no dispute that documents concerning ARCP's AFFO are relevant, AR Capital maintains it is appropriate to control its search for AFFO-related documents with limiters tied only to ARCP, because to do otherwise identifies documents which relate to AFFO for other REIT entities AR Capital sponsored or managed. Ex. 13. And AR Capital maintains Plaintiffs have only requested documents related to ARCP's AFFO, further justifying its protocol. But Plaintiffs' document requests more broadly define ARCP to include "any of its officers, directors, employees, direct or indirect subsidiaries, and divisions or ***affiliates*** (foreign and domestic)". Ex. 8 at 2.

Indeed, documents concerning the treatment of AFFO at ARCP-affiliates that AR Capital sponsored or maintained are relevant to the claims and defenses here. AR Capital, which was owned and controlled by defendants Schorsch, Brian Block, William Kahane, Peter Budko and Edward Weil, provided management and advisory services to not only ARCP, but to several of ARCP's affiliates during the Class Period, including owning defendant ARC Property Advisors LLC, ARCP's external management during the Class Period. TAC, ¶20. And while the misstatement of ARCP's AFFO was occurring, these same individuals simultaneously served as officers or directors of ARCP and other related entities that entered into transactions with ARCP. TAC, ¶¶24, 26-28, 32. Therefore, documents concerning how ARCP-affiliates accounted for AFFO are relevant to establishing Schorsch and Block's scienter with respect to the ARCP AFFO manipulations at issue in this case, particularly if the documents show that the ARCP-affiliates accounted for AFFO in one manner (correctly), and ARCP accounted for AFFO in another manner (incorrectly). To the extent AR Capital has possession, custody or control of these documents, they should be required to search for and produce them.

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 24

Moreover, while AR Capital has claimed that it would be unduly burdensome to review and produce documents containing the term AFFO, it has failed to make any such showing, which is its burden under Federal Rule of Civil Procedure 26(b)(1).  Plaintiffs requested, and AR Capital agreed to run, 31 searches suggested by Plaintiffs, based upon the information they currently possessed, in an attempt to capture relevant documents related to various issues, *not just AFFO*, where ARCP, or some variation thereof, was not also mentioned.  Ex. 12.  AR Capital informed Plaintiffs that its suggested searches returned "triple" the number of documents originally culled using AR Capital's search protocol.  Ex. 14.  However, AR Capital has *not identified* which portion of that new collection are documents returned in response to Plaintiffs' two AFFO-specific search term requests, as opposed to the other 29 search terms related to other issues in this matter Plaintiffs asked AR Capital to consider.[15]  It is their obligation to do so.  *In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (finding that the party resisting discovery failed to meet its burden of showing that document production "would be unduly burdensome or costly, such as an affidavit of a person with knowledge of the record keeping system explaining in detail the basis of the objection"); *Mortg. Resolution Servicing, LLC v. JP Morgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2016 U.S. Dist. LEXIS 91570, at *10 (S.D.N.Y. July 14, 2016) ("the party resisting discovery has the burden of showing undue burden or expense").

### 2.    AR Capital's Position

Plaintiffs misrepresent the parties' communications regarding their demand that AR Capital review all documents containing the search term "AFFO," and fail to make any showing how the discovery they seek would be relevant to their claims or proportional to the needs of the case.

As an initial matter, Plaintiffs requested production of documents relating to *ARCP*'s AFFO. They did not, as they purport to do now, broadly request documents relating to AFFO at other entities that AR Capital sponsored or managed.  *See* Ex. 8 (Request No. 6(a)-(d), Plaintiffs' First Omnibus Request for Production of Documents to AR Capital (Sept. 16, 2016)).  Rather, each of their requests for these documents was specifically limited to ARCP's AFFO, seeking documents concerning (a) "ARCP's AFFO, including the materiality of AFFO"; (b) "ARCP's AFFO calculation and methodology, including the basis for and factors considered in ARCP's AFFO calculation and methodology"; (c) "ARCP's AFFO guidance, including the basis for and factors

---

[15]    AR Capital faults Plaintiffs for not responding to its November 24, 2016 correspondence.  However, considering the parties had several meet and confer conferences, and exchanged correspondence discussing AR Capital's use of search terms Plaintiffs believed to be too restrictive.  And based upon AR Capital's statement that the volume of the additional hits was too burdensome to review and that "[a]ccordingly, our mid-December production of ESI will be based on the terms that we provided to you on October 10, 2016," (Ex. 14), Plaintiffs considered the matter completely vetted and closed for discussion.

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 25

considered in ARCP's AFFO guidance"; and (d) "ARCP's Restatement or correction of AFFO, including the events, acts and accounting improprieties giving rise to the Restatement and correction of AFFO." *Id.*[16]   On October 10, 2016, AR Capital provided Plaintiffs with proposed parameters for production of electronically stored information ("ESI"), including 55 searches that would be used to identify potentially responsive documents.  *See* Ex. ARC-A (Email from R. Beynon to D. Drosman (Oct. 10, 2016)).   Among other things, the search strings were designed to identify all documents containing the terms "AFFO," "FFO," or "funds from operations," provided those documents also contained "ARCP Limiters" – i.e., the terms "arcpreit.com," "ARCP," "American Realty Capital Prop*," or "ARC Properties."[17]   As AR Capital explained, using ARCP Limiters would ensure that the searches identified documents relating to ARCP's AFFO.  Without the ARCP Limiters, using "AFFO" as a standalone search term would result in "hits" on many documents that concerned other entities sponsored or managed by AR Capital.  As of December 15, 2016, AR Capital has produced more than 2 million pages of documents identified using the search terms.

The parties met and conferred regarding AR Capital's document production on November 2 and 14, 2016.  Taking the position that the search terms AR Capital had provided "are too restrictive and will not capture all relevant documents," Plaintiffs counter-proposed 31 search terms, including the term "AFFO." Ex. ARC-B (Letter from D. Wyman to R. Beynon at 1 (Nov. 4, 2016)).  AR Capital asked Plaintiffs to clarify whether they were seeking documents that actually relate to ARCP (as opposed to other entities).  *See* Ex. ARC-C (Emails between R. Beynon to D. Wyman (Nov. 4, 2016)).  Plaintiffs asked AR Capital to "consider our proposed search terms and run some test searches using them," at which point it would make "sense for [the parties] to have another discussion about this issue." *Id.*

In correspondence dated November 24, 2016, AR Capital explained that Plaintiffs' proposed search terms were manifestly unreasonable.  Plaintiffs' assertion that AR Capital "has failed to make any . . . showing" of undue burden that would be imposed by Plaintiffs' terms is thus simply false.  As AR Capital demonstrated, using those terms would approximately *triple* the number of documents for review.  *See* Ex. ARC-D (Letter from R. Beynon to D. Wyman (Nov. 24, 2016)).

---

[16]   Plaintiffs assert that their requests for production define ARCP to include its "affiliates," but under no reasonable construction of that term can the other entities that AR Capital managed be considered ARCP's "affiliates." ARCP was externally managed by a subsidiary of AR Capital. Other entities that were externally managed by other subsidiaries of AR Capital are not "affiliates" of ARCP merely because those subsidiaries share a common parent.

[17]   The relevant searches were (a) "AFFO AND (ARCP* OR "American Realty Capital Prop*" OR "ARC Properties" OR "*@arcpreit.com"); (b) "FFO AND (ARCP* OR "American Realty Capital Prop*" OR "ARC Properties" OR "*@arcpreit.com")"; and (c) "Funds from op*" AND (ARCP* OR "American Realty Capital Prop*" OR "ARC Properties" OR "*@arcpreit.com").

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 26

Moreover, review of a random sample of documents generated by Plaintiffs' proposed terms (confidence level of 95% and a confidence interval of $\pm$ 2.5%) showed that only 0.16% of the responsive documents in the sample did not also contain an ARCP Limiter. *See id.* Plaintiffs' assertion that AR Capital failed to provide specifics about the AFFO term is meritless; Plaintiffs never even requested such details. In view of these results, AR Capital declined to use the search terms in the form that Plaintiffs had proposed, but offered to discuss these matters further at Plaintiffs' convenience. *See id.*

Notwithstanding their earlier request that AR Capital evaluate Plaintiffs' "proposed search terms and run some test searches using them," at which point it would make "sense for [the parties] to have another discussion about this issue," see Ex. ARC-C, Plaintiffs failed to respond to AR Capital's November 24, 2016 letter. They never (a) made any counter-proposals to narrow their proposed search terms, (b) requested that AR Capital solely use the term "AFFO," as opposed to the 31 terms, or (c) explained why AFFO calculations made by entities other than ARCP have any bearing on the issues in this litigation. These issues have been raised for the first time in this letter to the Court, and Plaintiffs' demand should be denied on that basis alone.

Even on their merits, Plaintiffs' (new) arguments do not justify requiring AR Capital to review the additional documents that hit on the term "AFFO." Testing of Plaintiffs' terms resulted in a tiny responsiveness rate, demonstrating that the use of ARCP Limiters is reasonable and appropriate. As recent amendments to Federal Rule of Civil Procedure 26 make clear, it would be unnecessary and wasteful to impose on AR Capital the burden of reviewing all documents that hit on "AFFO." *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *see Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *13 n.10 (S.D.N.Y. Feb. 16, 2016) ("[T]he pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. The key here is careful and realistic assessment of actual need.") (quoting Chief Justice Roberts's 2015 Year-End Report on the Federal Judiciary). The amendment was intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments.[18]

---

[18]   *See also Gucci America, Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011) ("The broad standard of relevance [under Rule 26], however, is not a license for unrestricted discovery."); *Crawford-El v. Britton*, 523 U.S. 574,

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 27

Plaintiffs' argument that discovery relating to other entities' AFFO calculations bears on scienter is nothing more than sheer speculation.  Apart from the fact that their Requests do not even call for such discovery, other entities for which AR Capital and affiliates provided services or sponsorship described their AFFO calculations in SEC filings.  Yet Plaintiffs point to nothing in those submissions that would justify a fishing expedition into those entities' accounting records. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Plaintiffs do not point to any *specific* information that is relevant to their claims and would be found solely in the unproduced documents.") (emphasis in original).  The Court should reject Plaintiffs attempt in seeking discovery into matters unrelated to this case.

### D.   Dispute Concerning Documents and Communications with Deloitte LLP

### 1.   Plaintiffs' Position

On June 1, 2015, ARCP replaced GT as its auditor with Deloitte LLP ("Deloitte"). Plaintiffs' document requests to GT seek "documents and communications with or concerning Deloitte relating to ARCP." Ex. 15 at 9.  Plaintiffs have offered to narrow the time frame of this request to October 29, 2014 through June 30, 2015, the time period in which Deloitte and GT were likely transitioning, and thus the time period in which responsive documents were created.  In particular, during this transition time frame, auditing standards required Deloitte to make certain inquiries to GT about ARCP before accepting ARCP as a new auditing client.  For example, AU §315 provides:

> The successor auditor should make specific and reasonable inquiries of the predecessor auditor regarding matters that will assist the successor auditor in determining whether to accept the engagement. Matters subject to inquiry should include:
>
> • Information that might bear on the integrity of management.
>
> • Disagreements with management as to accounting principles, auditing procedures, or other similarly significant matters.
>
> • Communications to audit committees or others with equivalent authority and responsibility regarding fraud, illegal acts by clients, and internal-control-related matters.

---

598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 28

- The predecessor auditor's understanding as to the reasons for the change of auditors.

                        *       *       *

- The predecessor auditor's understanding of the nature of the company's relationships and transactions with related parties and significant unusual transactions.

    Communications between GT and Deloitte on these subjects areas (*e.g.*, the integrity of management, internal-control-related matters, accounting fraud, etc.) are directly relevant to the claims at issue in this case. Moreover, it strains credulity to imagine that Deloitte would accept this new audit engagement without receiving a thorough explanation from GT regarding the accounting scandal that had recently occurred at ARCP, and the resulting restatement.

    Additionally, GT has failed to articulate ***any*** burden associated with producing these documents, let alone an undue one, as is required to successfully oppose discovery under Rule 26. Fed. R. Civ. P. 26(b)(1); *see also Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS)(JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) ("[T]he party resisting discovery has the burden of showing undue burden or expense."). Nor can it, as the timeframe GT is being asked to search is extremely short, and the scope of the request is limited to documents involving Deloitte that relate specifically to ARCP. The burden is especially light if, as GT asserts, GT only began communicating with Deloitte in June 2015, just before the transition occurred. If that is indeed the case, then GT would only be reviewing and producing documents and communications between it and Deloitte that relate to ARCP ***for a one month period***. GT also ignores the fact that the required communications between the accounting firms necessarily relate to events and circumstances that occurred during the Class Period. For the reasons stated, GT should be compelled to produce all documents responsive to this request.

        **2.      GT's Position**

    Documents related to the transition of the audit of ARCP from Grant Thornton to Deloitte are not relevant to any claim or defense in this action, as the transition occurred well after the relevant events took place. Although Plaintiffs suggest that the transition from Grant Thornton to Deloitte took place over nearly nine months, from October 2014 to June 2015, that is not accurate. ARCP did not announce that its Audit Committee had approved the appointment of Deloitte as the Company's independent registered public accounting firm, and dismissed Grant Thornton, until

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 29

June 4, 2015.  *See* ARCP Form 8-K dated June 4, 2015.[19]  As is common practice, Grant Thornton was not informed until immediately prior to the public announcement.

The transition activities between Grant Thornton and Deloitte thus did not take place until June 2015.  Even under Plaintiffs' view, this is well after the relevant time period.  The putative Class Period in this action is between September 7, 2011 and October 29, 2014.  (Third Am. Compl., Dkt. No. 312 at ¶ 1.)  As Plaintiffs note in Part A above, Defendants including Grant Thornton have agreed to produce documents through March 31, 2015, which is after ARCP issued its restated financial statements for FY 2012, FY 2013, 1Q14 and 2Q14 and shortly after it filed its Form 10-K for fiscal 2014.  As Plaintiffs themselves set forth in Part A above, they view March 31, 2015 as a reasonable cut off for document production because it post-dates the Audit Committee's internal investigation, the resignation or termination of certain key personnel, and the restatement.

Plaintiffs do not articulate how information Grant Thornton may have provided to Deloitte in June 2015 – several months after all of these events – is relevant to their claims.  There would have been no reason, for example, for Deloitte to inquire about, or for Grant Thornton to comment on, the integrity of individuals who are Defendants in this case, as they were no longer members of ARCP's management.  Likewise, there would have been no reason for Deloitte to inquire about, or for Grant Thornton to comment on, accounting issues or internal control issues explained in detail in the restatement.  Plaintiffs simply have not provided any basis for requiring the production of these documents, which post-date the already generous and previously agreed-upon cut off date for production by several months.   And even if Plaintiffs could argue some possible connection between these documents and their claims, it is plainly unduly burdensome to require Grant Thornton to collect and produce these documents, which are at best minimally relevant to this matter.  *See* Fed. R. Civ. P. 26(b)(1) (scope of discovery limited by, among other things, proportionality, importance of the discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit).

E.      **Dispute Regarding All Plaintiffs' Refusal to Produce Documents
        Sufficient to Show Plaintiffs' Investment and Trading Histories Related
        to the Securities of Any Real Estate Investment Trust Other Than ARCP**

        1.      **Defendants' Position**

Defendants' joint document requests to Plaintiffs in all actions sought production of documents concerning Plaintiffs' actual or contemplated investments in the securities of real estate

---

[19] Available at https://www.sec.gov/Archives/edgar/data/1507385/000150738515000048/arcp8-kauditorchange.htm

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 30

investment trusts ("REITs") other than ARCP.[20]  Plaintiffs objected to the Requests as overly broad, arguing that the Requests would encompass, among other things, all SEC filings related to any non-ARCP REIT, all communications related to analyst coverage of non-ARCP REITs, and a significant set of other documents.  In response, Defendants have agreed to narrow the scope of the Requests to seek documents sufficient to show Plaintiffs' investment and trading histories in REITs other than ARCP.

Plaintiffs, however, continue to object on relevance grounds.  The Court should compel Plaintiffs to produce these documents because they are relevant to, among other things, whether each Plaintiff is entitled to rely upon the fraud-on-the-market presumption of reliance that it has asserted (and whether Defendants can rebut the presumption, if it is established).  This bears on both the merits of each Plaintiff's claims, *e.g.*, whether it can satisfy the "reliance" element of its Section 10(b) claims,[21] and whether Plaintiffs in the Class Action can carry their burden in seeking to certify a class, particularly the typicality requirement.[22]  As set forth below, numerous courts within and without this Circuit have held that a plaintiff's investment history is relevant for these reasons.

The fraud-on-the market presumption, which Plaintiffs in all of these related cases seek to assert to some extent, can be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014).  "[F]or example, if a defendant could show . . . that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply."  *Id.*  Thus, "[i]t is axiomatic under *Basic* [*Inc. v. Levinson*, 485 U.S. 224 (1988)] that non-reliance on the integrity of the market is critical in rebutting the presumption of reliance in a fraud on the market case."  *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 114 (S.D.N.Y. 1993).  Documents concerning each Plaintiff's investments in REITs other than

---

[20]   Specifically, the Requests sought documents concerning "any actual, recommended, or contemplated purchase, sale, assignment, pledge, gift, transfer, or other acquisition or disposition" of "any securities of any real estate investment trust other than ARCP," or any documents concerning communications with "any financial advisor(s) or other person(s)" relating to the same; documents concerning "modeling or calculation of performance and/or earnings metrics" regarding other REITS; "analyst reports, SEC filings, and annual and quarterly reports" concerning other REITs or any securities thereof; and "communications related to analyst coverage" and "communications to your investors, clients, members, or beneficiaries" regarding other REITs or any securities thereof.

[21]   Further, investment history will be relevant to any claim of direct reliance to the extent that Plaintiffs do not or cannot rely upon the fraud-on-the-market presumption, such as with certain Plaintiffs' Section 18 claims.

[22]   Merits and class certification discovery have not been bifurcated, but rather are proceeding concurrently.

Robbins Geller
Rudman & Dowd LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 31

ARCP are relevant to assessing whether those Plaintiffs actually relied upon the integrity of the market when purchasing ARCP securities, and whether the Plaintiffs would have made their purchases of ARCP securities regardless of any of the alleged misrepresentations. *See id.* (granting motion to compel discovery of named plaintiffs' investment history beyond defendants' securities in securities class action); *In re Grand Casinos, Inc.*, 181 F.R.D. 615, 620 (D. Minn. 1998) ("[We are persuaded, by the Defendants' amply supported arguments, that the proposed discovery of the Lead Plaintiffs' investment histories and strategies could lead to the discovery of admissible evidence; namely, evidence which could serve to rebut any presumption that they relied upon the integrity of the market."); *In re SciMed Life Sec. Litig.*, 1992 WL 413867, at *2 (D. Minn. Nov. 20, 1992) ("Defendant . . . should have an opportunity to rebut the presumption, using information obtained through discovery of investment history and background."). *Cf. In re Allergan, Inc. Sec. Litig.*, 2016 WL 5929250, at *5 (C.D. Cal. Oct. 5, 2016) (holding that lead plaintiff's trading history "meets the low bar of relevance under Rule 26" to rebutting the presumption of reliance upon omissions under *Affiliated Ute*).

If any Plaintiff did not rely upon the integrity of the market, then that Plaintiff cannot rely upon the fraud-on-the-market presumption. And if Plaintiffs in the Class Action did not rely on the market price, they could be subject to unique defenses and therefore would not be typical of a proposed class, rendering them unable to represent that class. *In re Harcourt*, 838 F. Supp. at 114 (reasoning that "a named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)," and that "such atypicality has resulted in denial of class certification" in some instances) (citations omitted); *Degulis v. LXR Biotechnology, Inc.*, 176 F.R.D. 123, 127 (S.D.N.Y. 1997) (holding that "[i]n addition to its relevance to the merits, [plaintiff's] sophistication and trading strategies is relevant to the pending class certification motion" and that "the issue of whether [plaintiff] satisfies the typicality requirement justifies the discovery requested."). Finally, if a Plaintiff would have made the purchases regardless of the alleged misrepresentations, then that Plaintiff's Section 10(b) claims fail.

In either event, the documents are relevant.

For these reasons, courts routinely recognize that documents relating to such activities are discoverable. *In re Allergan*, 2016 WL 5929250, at *4; *Bolling v. Dendreon Corp.*, 2015 WL 11233202, at *2-3 (W.D. Wash. June 19, 2015); *In re Acceptance Ins. Cos. Sec. Litig.*, 2002 WL 32793423, at *4 (D. Neb. Aug. 2, 2002); *In re Grand Casinos*, 181 F.R.D. at 619–20; *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 112 (M.D. Fla. 1996); *In re SciMed Life*, 1992 WL 413867, at *2–3; *Feldman v. Motorola, Inc.*, 1992 WL 137163, at *2–3 (N.D. Ill. June 10, 1992). And, contrary to Plaintiffs' suggestion, courts *have* ordered institutional investors (not only individual investors) to produce such documents. *See, e.g.*,

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 32

*In re SciMed Life*, 1992 WL 413867, at *2-3 (ordering all plaintiffs to provide documents related to investment history – a subsequent decision in the case, 1993 WL 616692, at *8 (D. Minn. Sept. 29, 1993), makes clear that an institutional retirement plan is among the class representatives); Barry B. Roseman, 165 F.R.D. at 112 (ordering all plaintiffs, including a company profit-sharing plan, to produce "investment or trading history in other publicly held securities").   Nor can Plaintiffs provide any reason why institutional investors should be treated differently, given that institutional investors may rely on factors other than market price when making investment decisions.   *See Halliburton*, 134 S. Ct. at 2422 (Thomas, J., concurring in the judgment) ("Other investors trade for reasons entirely unrelated to price – for instance, to address changing liquidity needs, tax concerns, or portfolio balancing requirements.").   Plaintiffs' claim that they held over $13 billion in REIT holdings only underscores the need for documents that demonstrate how they made their investment decisions.

Plaintiffs' argument that production of trading records in non-ARCP REITs is unnecessary because they have already produced documents describing their broad investment strategies is unpersuasive. While these documents purport to show Plaintiffs' trading strategies, only the trading records themselves demonstrate how those strategies were actually implemented.

Nor are the Requests overly broad, in light of Defendants' more narrowly-tailored request seeking documents sufficient to show Plaintiffs' investment and trading histories in REITs other than ARCP.   As discussed above, courts routinely require production of a plaintiff's *entire* investment history.   Here, Defendants have not even gone that far, requesting instead only information regarding Plaintiffs' investment activities in other REITs, not Plaintiffs' complete investment activities related to any and all securities.[23]   Thus, unlike in the case relied upon by Plaintiffs, the document requests are narrowly tailored to the REIT industry.   *See In re Motel 6 Sec. Litig.*, 1996 WL 474175, at *2 (S.D.N.Y. Aug. 21, 1996) (denying request for plaintiffs' investment history where class had already been certified and defendants submitted a broad request for a "detailed history of plaintiffs' trading history in all stocks" near the conclusion of fact discovery) (emphasis added).   And Defendants' revised request would not require Plaintiffs to produce *all* documents concerning non-ARCP REITs, only those sufficient to show their investment and trading histories in such REITs.[24]   The Court should compel Plaintiffs to produce these documents.

---

[23]   *Cf. In re AES Corp. Sec. Litig.*, 849 F. Supp. 907, 909 (S.D.N.Y. 1994) (class plaintiffs conceded that "past investments in companies in the same industry as [defendant] may be relevant" to rebutting plaintiffs' reliance).

[24]   Notably, Plaintiffs rejected Defendants' proposed compromise that they produce documents sufficient to show their investment and trading histories in thirteen REITs that had been identified as peers in ARCP's public filings or analyst reports during the Class Period.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 33

> 2. **Plaintiffs' Position**

Plaintiffs have produced to defendants in this litigation their respective transactional data in the securities of ARCP during the Relevant Period, together with related internal analyses, models, calculations, evaluations; external communications with investors and other third parties relating to such investments; as well as analyst reports, SEC filings, press releases, conference call transcripts, and other public statements relating to Plaintiffs' investments in ARCP securities. In addition, Plaintiffs have produced documents concerning themselves, *i.e.*, prospectuses, profiles, and other documents describing their trading strategies, goals and objectives. This has resulted in Plaintiffs producing more than 1.18 million pages of documents to defendants. These documents and communications provide defendants with ample information concerning Plaintiffs and the ARCP investments at issue.

Notwithstanding, defendants now seek to compel each Plaintiff to produce documents concerning any actual or contemplated investment in REITs, other than ARCP, that have absolutely no connection to this litigation. This misguided request will yield irrelevant information and will only serve to impose an undue burden on Plaintiffs.

> a. **Non-ARCP REIT Investments Are Not Relevant to Any**
> **Claim or Defense in This Matter**

Discovery of Plaintiffs' transactions in REITs that are not at issue in this matter has no relevance to the parties' claims and defenses. For this reason, courts in this District have consistently rejected similar efforts to compel securities fraud plaintiffs to produce documents relating to their investments in companies not at issue in the underlying action. *See e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (WCC), 2005 WL 6456902, at *3 (S.D.N.Y. June 21, 2005) (denying motion to compel production of plaintiff's trading records in companies other than the defendant); *In re Motel 6 Sec. Litig.*, No. 93 Civ. 2183 (JFK), 1996 WL 474175, at *1 (S.D.N.Y. Aug. 21, 1996) (same).

Defendants incorrectly speculate that Plaintiffs' trading history in REITs other than ARCP *may* provide evidence rebutting the fraud-on-the-market reliance presumption, and that Plaintiffs in the Class Action *may be* subject to "unique defenses" rendering their claims atypical to those of the proposed class. Defendants' speculation has been flatly rejected by multiple courts, including in *Flag Telecom*, which found that where a plaintiff alleges reliance through the fraud-on-the-market presumption, "[t]here is nothing to indicate that production of these documents [trading records in non-relevant securities] could somehow lead to severing the link between the defendants' allegedly fraudulent statements and the market price or plaintiffs' decision to buy or sell [the subject] stock." 2005 WL 6456902, at *3. The same is true here.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 34

Moreover, defendants' relevance arguments necessarily have no application to certain Plaintiffs, such as index funds and exchange traded funds ("ETFs") that by definition follow passive investment strategies that replicate a predetermined index of securities. *See, e.g., In re Merck & Co. Vytorin/Zetia Sec. Litig.*, No. 08-2177 (DMC)(JAD), 2012 WL 4482041, at *6 (D.N.J. Sept. 25, 2012) ("[T]he law fully supports the notion that index purchases and the like are in fact a perfect example of reliance on the market.").

While defendants assert that Plaintiffs trading in **non-ARCP REITs** may somehow prove that Plaintiffs did not rely on the integrity of the market price of **ARCP's securities**, they fail to explain how and why Plaintiffs' trading records in securities wholly irrelevant to this matter may provide such proof. Instead they support their argument with inapplicable authority in which the trading histories of **individual retail investors, not institutional investors**, were ordered produced so that the defendants could ascertain the trading strategies. *See Degulis v. LXR Biotechnology,* 176 F.R.D. 123, 126 (S.D.N.Y. 1997) (trading records relevant to determining plaintiffs' trading strategies); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 114 (S.D.N.Y. 1993) (trading histories relevant to determining if plaintiffs employed trading strategy that did not rely on market price); *In re Grand Casinos, Inc. Sec. Litig.*, 181 F.R.D. 615, 621 (D. Minn. 1998) (trading records relevant to determining plaintiffs' trading strategies); *In re SciMed Life Sec. Litig.*, No. 3-91-575, 1992 WL 413867, at *2 (D. Minn. Nov. 20, 1992) (same); *In re Allergan, Inc. Sec. Litig.*, No. 14-cv-02004-DOC (KES), 2016 WL 5929250, at *3-*4 (C.D. Cal. Oct. 5, 2016) (same).

Here, production of Plaintiffs' trading records is particularly unnecessary given that Plaintiffs have **already produced** to defendants ample documents and information describing their respective trading strategies –including detailed investment policies and guidelines, strategy statements, and investment objectives and approaches. And, to the extent defendants have any remaining questions about Plaintiffs' trading strategies in ARCP securities, defendants can question Plaintiffs' witnesses in deposition – an approach recently ordered by Judge Rakoff in denying defendants' motion to compel non-Petrobas trading information from plaintiffs to be undertaken in the *In re Petrobas Sec. Litig.*, No. 1:14-09662JSR (S.D.N.Y.) matter. *See* Ex. 16.

        **b.**      **Production of Non-ARCP REIT Investment and Trading Information, Even for a Sub-Set of Plaintiffs' REIT Investments, Is Unduly Burdensome**

Defendants' request for years of transactional information in every REIT **other than** ARCP is also extremely burdensome. The market for REITs is large and diverse. There are approximately 270 REITs worth over $1 trillion traded on U.S. exchanges, and approximately 535 REITs worth over $550 billion traded on foreign exchanges. These REITs cover dozens of specialized sectors such as apartments, manufactured homes, office property, shopping centers, hotels, health care

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 35

facilities, storage facilities, and warehouse and industrial facilities, as well as real estate development, real estate management services, heavy construction, and financial mortgage products. In addition, dozens of REITs totaling tens of billions of dollars and covering various sectors trade on the over-the-counter markets.

Here, Plaintiffs' collective REIT holdings easily exceed **$13 billion dollars**, with Class Lead Plaintiff TIAA holding approximately $3 billion in REIT investments, Class Plaintiff New York City Funds' $2.5 billion in REIT investments and certain Opt-Out Plaintiffs investing over $8 billion in fund assets exclusively in real estate investments, including REITs.[25] For example, certain Opt-Out Plaintiffs are index funds and ETFs that invest a **substantial portion** of their assets in REITs. These Plaintiff funds currently hold over 260 U.S. REITs from various sectors, including retail (62 REITs), office (48 REITs), and health care (20 REITs). They also include foreign REITs, including over 250 REITs from dozens of different countries. Other Opt-Out Plaintiffs are large ETFs that invest **virtually all** of their assets in REITs. These Plaintiffs currently hold over 170 publicly traded U.S. REITs, from a variety of sectors. Collecting all REIT-related transactional data responsive to defendants' overbroad requests for these and the other Plaintiff funds would pose an undue burden.

Defendants have not articulated any reason justifying the production of the trading records for over $13 billion of non-ARCP REIT investments and the contemplated investments in any other REIT. Nor have they articulated a basis for the production of documents concerning investments in a sub-set of REITs offered as a compromise to Plaintiffs. Defendants have instead described **a mere possibility** that these records (**and not the investment policies that guided Plaintiffs' investments in ARCP**) may provide evidence to rebut the fraud-on-the-market reliance presumption or show that Class Action Plaintiffs do not have typical claims. That is not enough to justify the substantial burden of producing records evidencing billions of dollars of transactions in hundreds of securities other than those here at issue, covering large and diverse markets. *See e.g.*, *In re Motel 6*, 1996 WL 474175, at *1 (finding that "a blunderbuss request for plaintiffs' prior trading in other, unrelated securities promises to be both extremely burdensome and of only marginal value in assessing what trading strategy they utilized in connection with their purchase and sale of [the stock at issue].").

---

[25]    This total does not even include holdings by the other institutional investors in the Class Action and related-opt out matters.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Alvin K. Hellerstein
January 21, 2017
Page 36


     Accordingly, defendants' request to compel Plaintiffs' production of non-ARCP REIT investment and trading records should be denied as irrelevant, overbroad and unduly burdensome.


          Respectfully submitted,

          JESSICA T. SHINNEFIELD

JTS:krj
Enclosure
cc:    All Counsel on Service List (attached)

## SERVICE LIST

**COUNSEL FOR PLAINTIFFS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| Darren J. Robbins<br>Michael J. Dowd<br>Daniel S. Drosman<br>Debra J. Wyman<br>Jessica T. Shinnefield<br>Ashley M. Price<br>Jennifer N. Caringal<br>Angel P. Lau | ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619/231-1058<br>619/231-7423 (fax)<br><br>*Lead Counsel for Lead Plaintiff TIAA and the Class* | darrenr@rgrdlaw.com<br>miked@rgrdlaw.com<br>dand@rgrdlaw.com<br>debraw@rgrdlaw.com<br>jshinnefield@rgrdlaw.com<br>aprice@rgrdlaw.com<br>jcaringal@rgrdlaw.com<br>alau@rgrdlaw.com |
| Samuel H. Rudman<br>Robert M. Rothman | ROBBINS GELLER RUDMAN & DOWD LLP<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>Telephone: 631/367-7100<br>631/367-1173 (fax)<br><br>*Lead Counsel for Lead Plaintiff TIAA and the Class* | srudman@rgrdlaw.com<br>rrothman@rgrdlaw.com |
| Blair A. Nicholas<br>Jonathan D. Uslaner<br>David Kaplan | BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP<br>12481 High Bluff Drive, Suite 300<br>San Diego, CA  92130<br>Telephone:  858/793-0070<br>858/793-0323 (fax)<br><br>*Attorneys for Plaintiffs in the Blackrock, Clearline, HG Vora, Pentwater, PIMCO and Twin Securities Actions* | blairn@blbglaw.com<br>jonathanu@blbglaw.com<br>davidk@blbglaw.com |

| NAME | FIRM | EMAIL |
|---|---|---|
| Mark Lebovitch | BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone:  212/ 554-1400<br>212/554-1444 (fax)<br>markl@blbglaw.com<br><br>*Attorneys for Plaintiffs in the Blackrock, Clearline, HG Vora, Pentwater, PIMCO and Twin Securities Actions* | markl@blbglaw.com |
| Lawrence M. Rolnick<br>Marc B. Kramer<br>Thomas E. Redburn, Jr.<br>Michael J. Hampson<br>Brandon Fierro | LOWENSTEIN SANDLER LLP<br>1251 Avenue of the Americas<br>New York, NY  10020<br>Telephone: 212/262-6700<br>212/262-7402 (fax)<br><br>*Attorneys for Plaintiffs in the Jet Capital, Archer and Atlas Opt Out Actions* | lrolnick@lowenstein.com<br>mkramer@lowenstein.com<br>tredburn@lowenstein.com<br>mhampson@lowenstein.com<br>bfierro@lowenstein.com |
| Robert I. Harwood<br>Samuel K. Rosen<br>Benjamin I. Sachs-Michaels | HARWOOD FEFFER LLP<br>480 Madison Avenue<br>New York, NY 10022<br>Telephone: 212/935-7400<br>212/935-3630 (fax)<br><br>*Attorneys for Derivative Plaintiffs* | rharwood@hfesq.com<br>srosen@hfesq.com<br>bsachsmichaels@hfesq.com |

**COUNSEL FOR DEFENDANTS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| Scott A. Edelman<br>Antonia M. Apps<br>Jonathan Ohring | MILBANK TWEED HADLEY<br>  & McCLOY LLP<br>28 Liberty Street<br>New York, NY  10005<br>Telephone:  212/530-5000<br>212/530-5219 (fax)<br><br>*Attorneys for Defendants American Realty Capital Properties, Inc. and ARC Properties Operating Partnership, L.P.* | aapps@milbank.com<br>sedelman@milbank.com<br>johring@milbank.com |

| NAME | FIRM | EMAIL |
|------|------|-------|
| Reid M. Figel<br>Andrew E. Goldsmith<br>Bradley E. Oppenheimer | KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.<br>1615 M Street N.W., Suite 400<br>Washington, D.C. 20036<br>Telephone:  202/326-7900<br>202/326-7999 (fax)<br><br>*Attorneys for Defendant AR Capital, LLC, Defendant ARC Properties Advisors, LLC, Defendant Scott J. Bowman, Defendant Peter M. Budko, Defendant Brian D. Jones, Defendant William K. Kahane, Defendant Edward M. Weil* | rfigel@khhte.com<br>agoldsmith@khhte.com<br>boppenheimer@khhte.com |
| Guy Petrillo<br>Daniel Goldman | PETRILLO KLEIN & BOXER LLP<br>655 Third Avenue, 22nd Floor<br>New York, NY  10017<br>Telephone:  212/370-0330<br>212/370-0391 (fax)<br><br>*Attorneys for Defendant Lisa Beeson* | gpetrillo@pkbllp.com<br>dgoldman@pkbllp.com |
| Michael C. Miller<br>Michael G. Scavelli | STEPTOE & JOHNSON LLP<br>1114 Avenue of the Americas<br>New York, NY  10036<br>Telephone:  212/506-3900<br>212/506-3950 (fax)<br><br>*Attorneys for Defendant Brian S. Block* | mmiller@steptoe.com<br>mscavelli@steptoe.com |
| Lara E. Romansic<br>Molly Bruder Fox | STEPTOE & JOHNSON<br>1330 Connecticut Avenue, NW<br>Washington, DC  20036<br>Telephone:  202/429-3000<br>202/429-3902 (fax)<br><br>*Attorneys for Defendant Brian S. Block* | lromansic@steptoe.com<br>mbfox@steptoe.com |

| NAME | FIRM | EMAIL |
|------|------|-------|
| Gary F. Bendinger | SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY  10019<br>Telephone:  212/839-5300<br>212/839-5599 (fax)<br><br>*Attorneys for Defendant Grant Thornton LLP* | gbendinger@sidley.com |
| Bruce R. Braun | SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, IL  60603<br>Telephone:  312/853-7000<br>312-853-7036 (fax)<br><br>*Attorneys for Defendant Grant Thornton LLP* | bbraun@sidley.com |
| Robert Khuzami<br>James P. Gillespie<br>Jason R. Parish<br>Beth Mueller | KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, N.W. Suite 1200<br>Washington, D.C. 20005<br>Telephone:  202/879-5000<br>202/879-5200 (fax)<br><br>*Attorneys for Defendant David Kay* | robert.khuzami@kirkland.com<br>james.gillespie@kirkland.com<br>jason.parish@kirkland.com<br>beth.mueller@kirkland.com |
| William W. Taylor, III<br>Dwight P. Bostwick<br>Adam L. Fotiades | ZUCKERMAN SPAEDER LLP<br>1800 M Street NW, Suite 1000<br>Washington, DC  20036-5807<br>Telephone:  202/778-1800<br>202/822-8106 (fax)<br><br>*Attorneys for Defendant Lisa P. McAlister* | wtaylor@zuckerman.com<br>dbostwick@zuckerman.com<br>afotiades@zuckerman.com |
| Shawn P. Naunton | ZUCKERMAN SPAEDER LLP<br>399 Park Avenue, 14th Floor<br>New York, NY  10022-4614<br>Telephone:  212/704-9600<br>212/704-4256 (fax)<br><br>*Attorneys for Defendant Lisa P. McAlister* | snaunton@zuckerman.com |

| NAME | FIRM | EMAIL |
|---|---|---|
| Luigi Spadafora<br>Matthew Tracy | WINGET, SPADAFORA &<br>SCHWARTZBERG LLP<br>45 Broadway, 19th Floor<br>New York, NY  10006<br>Telephone:  212-221-6900<br>212-221-6989 (fax)<br><br>*Attorneys for Defendant Realty Capital Securities, LLC* | Spadafora.L@wssllp.com<br>Tracy.M@wssllp.com |
| Theodore V. Wells Jr.<br>Daniel J. Kramer<br>Lorin L. Reisner<br>Audra J. Soloway<br>Justin D. Lerer<br>Joshua D. Kaye | PAUL, WEISS, RIFKIND,<br>WHARTON & GARRISON<br>1285 Avenue of the Americas<br>New York, NY  10019-6064<br>Telephone:  212/373-3000<br>212/757-3990 (fax)<br><br>*Attorneys for Defendant Nicholas S. Schorsch* | twells@paulweiss.com<br>dkramer@paulweiss.com<br>lreisner@paulweiss.com<br>asoloway@paulweiss.com<br>jlerer@paulweiss.com<br>jkaye@paulweiss.com |
| Robin L. Alperstein | BECKER, GLYNN, MUFFLY,<br>CHASSIN & HOSINSKI LLP<br>299 Park Avenue<br>New York, NY  10171<br>Telephone:  212/888-3033<br>212/888-0255 (fax)<br><br>*Attorneys for Defendant Scott P. Sealy, Sr.* | ralpertstein@beckerglynn.com |
| John P. MacNaughton<br>Eric A. Larson | MORRIS, MANNING<br>& MARTIN LLP<br>3343 Peachtree Road, N.E.,<br>Suite 1600<br>Atlanta, GA  30326<br>Telephone:  404-233-7000<br>404-365-9532 (fax)<br><br>*Attorneys for Defendant Scott P. Sealy, Sr.* | jmacnaughton@mmmlaw.com<br>elarson@mmmlaw.com |

| NAME | FIRM | EMAIL |
|------|------|-------|
| Richard W. Slack<br>Christopher L. Garcia<br>Evert J. Christensen, Jr. | WEIL, GOTSHAL<br>& MANGES LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>Telephone:  212/310-8000<br>212/310-8007 (fax)<br><br>*Attorneys for Director Defendants*<br>*Thomas A. Andruskevich, Bruce D.*<br>*Frank, Leslie D. Michelson,*<br>*Edward G. Rendell and William G.*<br>*Stanley* | richard.slack@weil.com<br>christopher.garcia@weil.com<br>evert.christensen@weil.com |
| Adam S. Hakki<br>Daniel C. Lewis<br>H. Miriam Farber | SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, NY  10022-60697<br>Telephone:  212/848-4000<br>212/848-7179 (fax)<br><br>*Attorneys for Underwriter*<br>*Defendants* | ahakki@shearman.com<br>daniel.lewis@shearman.com<br>mfarber@shearman.com |
| Elkan Abramowitz<br>Lawrence Iason<br>Daniel F. Wachtell | MORVILLO ABRAMOWITZ<br>GRAND IASON & ANELLO PC<br>565 Fifth Avenue<br>New York, NY 10017<br>Telephone: 212/856-9600<br>212/856-9494 (fax)<br><br>*Attorneys for American Realty*<br>*Capital Properties, Inc. in its*<br>*capacity as Nominal Defendant* | eabramowitz@maglaw.com<br>liason@maglaw.com<br>dwachtell@maglaw.com |