**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC. LITIGATION | 15-MC-40 (AKH) |
| ETON PARK FUND, L.P. and <br> ETON PARK MASTER FUND, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC. (n/k/a VEREIT, INC.), ARC PROPERTIES OPERATING PARTNERSHIP L.P. (n/k/a VEREIT OPERATING PARTNERSHIP, L.P.), AR CAPITAL LLC, NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN S. BLOCK, LISA P. MCALISTER, LISA BEESON, EDWARD M. WEIL, PETER M. BUDKO, BRIAN D. JONES, WILLIAM M. KAHANE, LESLIE D. MICHELSON, WILLIAM G. STANLEY, EDWARD G. RENDELL, SCOTT J. BOWMAN, THOMAS A. ANDRUSKEVICH, and SCOTT P. SEALY, SR., <br><br> Defendants. | Civil Action No. 1:16-cv-09393-AKH <br><br><br><br><br><br> <u>Oral Argument Requested</u> |

**DEFENDANTS AR CAPITAL, LLC, NICHOLAS S. SCHORSCH, EDWARD M. WEIL, PETER M. BUDKO, AND WILLIAM M. KAHANE'S**
<u>**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

    I.      Procedural History .................................................................................................. 2

    II.     Plaintiff Eton Park ................................................................................................... 4

    III.    The *Eton Park* Complaint ...................................................................................... 4

ARGUMENT ............................................................................................................................ 6

    I.      The Swap Claims Under the 1934 Act Are Time-Barred ....................................... 6

    II.     The Section 10(b) and 20(a) Claims, and the New York State Common Law Fraud Claim, Are Deficient Under Rule 9(b) ........................................................... 9

    III.    The Section 15 and 20 Claims Must Be Dismissed Consistent with This Court's August 5 Order ...................................................................................................... 10

    IV.    The Complaint Should Be Dismissed for the Reasons Cited in Defendants' Previous Motions to Dismiss ................................................................................. 11

CONCLUSION ....................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ....................7

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ..................................1, 6, 7, 8, 9

*Arneil v. Ramsey*, 414 F. Supp. 334 (S.D.N.Y. 1976) ...................................................................7

*Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, *In re*, 995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd on other grounds sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. LLC*, 829 F.3d 173 (2d Cir. 2016), *cert. pending*, No. 16-372 (U.S. filed Sept. 22, 2016) ......................................................1, 7, 8, 9

*Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086 (S.D.N.Y. 1990) .......................................................7

*Card v. Duker*, 122 F. App'x 347 (9th Cir. 2005) ..........................................................................7

*Copper Antitrust Litig.*, 436 F.3d 782 (7th Cir. 2006) ...................................................................7

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ..............................................................6

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 562 F. Supp. 2d 511 (S.D.N.Y.), *aff'd*, 292 F. App'x 133 (2d Cir. 2008*), and aff'd in part, vacated in part on other grounds, remanded*, 654 F.3d 276 (2d Cir. 2011) .......................................................8

*Dodds v. Cigna Sec., Inc.*, 12 F.3d 346 (2d Cir. 1993) ...................................................................6

*Fraser v. Fiduciary Trust Co., Int'l.*, No. 04 Civ. 6958 (RMB) (GWG), 2005 WL 6328596 (S.D.N.Y. June 23, 2005).............................................................................2, 10

*Gross v. Diversified Mortg. Investors*, 431 F. Supp. 1080 (S.D.N.Y. 1977) ................................10

*Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975) .......................................................6, 7

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157 (C.D. Cal. 2010) .........................................................................................................................7

*Manning v. Utilities Mutual Ins. Co.*, 254 F.3d 387 (2d Cir. 2001) ..............................................10

*New Oriental Educ. & Tech. Grp. Sec. Litig.*, *In re*, 293 F.R.D. 483 (S.D.N.Y. 2013) ..................7

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ........................................................................10

*Spann v. Cmty. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785 (N.D. Ill. Mar. 30, 2004) ................................................................................................................................8

*Tannenbaum v. Walco Nat'l Corp.*, No. 83 Civ. 6815, 1984 WL 2374 (S.D.N.Y. Jan. 27, 1984) ..................................................................................................................2, 10

*Vertrue Mktg. & Sales Practices Litig., In re*, 712 F. Supp. 2d 703 (N.D. Ohio 2010) ...................7

*Wells Fargo Mortg.-Backed Certificates Litig., In re*, No. 09-CV-01376-LHK, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010)................................................................................8

*WorldCom, Inc. Sec. Litig., In re*, 294 F. Supp. 2d 431 (S.D.N.Y. 2003) .......................................7

**Statutes and Rules**

Securities Act of 1934, 15 U.S.C. § 77a *et seq.*....................................................................... *passim*

§ 11, 15 U.S.C. § 77k.................................................................................................5

§ 15, 15 U.S.C. § 77l.................................................................................2, 5, 10, 11

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ....................................................... *passim*

§ 10(b), 15 U.S.C. § 78j(b) ..............................................................................1, 6, 9, 10

§ 20(a), 15 U.S.C. § 78t(a)..........................................................................1, 2, 6, 9, 10

28 U.S.C. § 1658(b)(1) .....................................................................................................................6

Fed. R. Civ. P. 9(b) ............................................................................................................1, 2, 9, 10

*DRAFT – ATTORNEY WORK PRODUCT*
*PRIVILEGED & CONFIDENTIAL*

**PRELIMINARY STATEMENT**

Plaintiffs' claims under the Securities Exchange Act of 1934 arising out of their transactions in security-based swap agreements are time-barred, because Plaintiffs first brought them more than two years after the disclosure of the alleged accounting improprieties on which they rely. Contrary to the legal argument in the Complaint, the filing of a putative class action by other shareholders does not excuse Plaintiffs' delay under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because the plaintiffs in the Class Action have never asserted the swap-based claims that Plaintiffs assert here (the "Swap Claims"). The Swap Claims do not arise from transactions in American Realty Capital Properties, Inc. ("ARCP") common stock or debt securities, as do the claims of the putative class representatives in the Class Action. Instead, Plaintiffs Eton Park Fund, L.P. and Eton Park Master Fund, Ltd. (together, "Eton Park") entered into swaps that were derivative transactions with private parties, not registered on any exchange and not disclosed to any regulator or third party or even to ARCP. Accordingly, the filing of the Class Action did not toll the two-year statute of limitations for Eton Park's claims under Sections 10(b) and 20(a) of the 1934 Act. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 303 (S.D.N.Y. 2014) (holding that putative class action alleging claims based on common stock transactions did not toll limitations period for individual claims based on swap transactions), *aff'd on other grounds sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. LLC*, 829 F.3d 173 (2d Cir. 2016), *cert. pending*, No. 16-372 (U.S. filed Sept. 22, 2016).

In addition, Eton Park's Section 10(b) and 20(a) and New York common law fraud claims – whether arising out of common stock or swaps – do not allege with particularity information regarding Eton Park's transactions to satisfy Rule 9(b). Under multiple precedents

from this district, Eton Park must allege the date when it acquired the securities, the number of shares it owns, and the consideration it paid. *See, e.g.*, *Fraser v. Fiduciary Trust Co., Int'l.*, No. 04 Civ. 6958 (RMB) (GWG), 2005 WL 6328596, at *4 (S.D.N.Y. June 23, 2005) (dismissing complaint lacking such allegations); *Tannenbaum v. Walco Nat'l Corp.*, No. 83 Civ. 6815, 1984 WL 2374, at *2 (S.D.N.Y. Jan. 27, 1984) (same). Eton Park has alleged none of these things.

Finally, Eton Park's Section 15 and 20(a) claims against Defendants Nicholas S. Schorsch, Edward M. Weil, Peter M. Budko, and William M. Kahane assert claims that were previously dismissed in the Class Action. By its terms, the Court's order in the Class Action applies to opt-out cases. Accordingly, Eton Park's Section 15 and 20(a) claims against these Defendants should be dismissed.

For these reasons, the Court should dismiss Counts IV and V as time-barred to the extent they assert claims arising from swap transactions and, independently, should dismiss Counts IV, V, and VI in their entirety for failure to satisfy Rule 9(b). Finally, the Court should dismiss Counts III and V against Messrs. Schorsch, Weil, Budko, and Kahane for the reasons stated in its August 5, 2016 Order.

## STATEMENT OF FACTS

### I. Procedural History

Soon after ARCP issued a statement of non-reliance on certain previous financial statements on October 29, 2014, a series of putative class action lawsuits alleging violations of federal securities laws were filed in the Southern District of New York by purchasers of ARCP common stock and stock options. On February 13, 2015, those actions were consolidated for pre-trial proceedings. *See* Order, *In re American Realty Capital Properties, Inc.*, No. 15-mc-40 (AKH) (S.D.N.Y.) (the "Class Action"), ECF No. 1. On April 17, 2015, Lead Plaintiff TIAA-

*DRAFT – ATTORNEY WORK PRODUCT*
*PRIVILEGED & CONFIDENTIAL*

CREF filed a consolidated class action complaint asserting claims on behalf of "[a]ll persons or entities who purchased or otherwise acquired ARCP securities, including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock, between September 7, 2011 and October 29, 2014." Amended Class Action Complaint ("Am. Compl.") ¶ 382, ECF No. 30. Plaintiffs amended their complaint in the Class Action twice more without changing the class definition. *Compare* Am. Compl. ¶ 382 *with* Second Am. Compl. ¶ 302, ECF No. 170 *and* Third Am. Compl. ¶ 302, ECF No. 312. The eleven putative class representatives purchased ARCP common stock, debt securities and Series F Preferred stock, as well as option contracts on unspecified ARCP stock. *See* Am. Compl. ¶¶ 21-31. Their securities purchases, including the nature of the position taken, number of shares purchased, purchase price, order type, whether the position is open or closed, and trade date were detailed in certifications attached to each of the complaints in the Class Action. *See, e.g., id.* at 185-275.

No complaint in the Class Action has included any allegation concerning transactions in swaps, and no putative class representative has alleged that it bought or sold swaps. After the Court denied in part Defendants' motions to dismiss the Second Amended Class Action Complaint on September 5, 2016, the parties to the Class Action and nine opt-out cases began conducting document discovery. The Class Action plaintiffs filed the Third Amended Class Action Complaint on September 30, 2016, keeping the same class definition as in their previous complaints. Initial document discovery concluded on December 15, 2016, and has resulted in the production of several million pages of documents to date. *See* Order at 1, ECF No. 299; Pltfs' Ltr. to Court at 24-27 (Jan. 21, 2017), ECF No. 349. Eton Park has not participated in discovery.

### II. Plaintiff Eton Park

Eton Park describes itself as a highly sophisticated "global investment firm" that "employs an active strategy based on an analytical, research-driven investment process." Compl. ¶¶ 5, 197, *Eton Park Fund, L.P. v. American Realty Capital Properties, Inc.*, No. 1:16-cv-09393 (S.D.N.Y. filed Dec. 5, 2016) ("Compl."). Bernstein Litowitz Berger & Grossmann LLP, Eton Park's counsel, filed six individual shareholder suits on behalf of other opt-out plaintiffs between February 20, 2015 and October 28, 2015.[1] Eton Park filed its Complaint much later, on December 5, 2016, more than two years after ARCP's October 29, 2014 disclosure and more than a year after the previous complaint filed by its counsel.

### III. The *Eton Park* Complaint

The Complaint primarily repeats the substance of the factual allegations in the Class Action and other opt-out complaints. Eton Park asserts various violations of the federal securities laws and New York law. Compl. ¶¶ 28, 63. The Complaint alleges that ARCP included "false and misleading statements" in the proxy materials for its merger with Cole Real Estate Investments, Inc., completed in February 2014 (the "Cole Merger"), and in the offering materials for a May 21, 2014 stock offering. *Id.* ¶¶ 3, 6. Eton Park alleges that it "could not have reasonably discovered [the alleged misstatements and omissions in ARCP's proxy

---

[1] *See Twin Securities, Inc., et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-01291-AKH (S.D.N.Y. filed Feb. 20, 2015); *HG Vora Special Opportunities Master Fund, LTD v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-04107-AKH (S.D.N.Y. filed May 28, 2015); *Blackrock ACS US Equity Tracker Fund, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08464-UA (S.D.N.Y. filed Oct. 27. 2015); *PIMCO Funds: PIMCO Diversified Income Fund, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-08466 (S.D.N.Y. filed Oct. 27, 2015); *Clearline Capital Partners LP, et al. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-08467 (S.D.N.Y. filed Oct. 28, 2015); *Pentwater Equity Opportunities Master Fund Ltd. v. American Realty Capital Properties, Inc., et al.*, No. 1:15-cv-08510 (S.D.N.Y. filed Oct. 28, 2015).

materials] before October 29, 2014," *id.* ¶ 47, when ARCP announced that its Audit Committee had identified certain errors in its financial statements for Q1 and Q2 2014, and that its financial statements for FY 2013 and Q1 and Q2 2014 should no longer be relied upon.

The Complaint alleges scant details of Eton Park's investments in ARCP. Eton Park vaguely asserts that it lost money in connection with its purchase of "a significant amount of [ARCP] common stock and/or [s]waps" in connection with the Cole Merger and the May 21, 2014 stock offering. *Id.* ¶¶ 200-201. The Complaint generally alleges that ARCP common stock traded on the NASDAQ stock exchange and that Eton Park purchased or acquired some ARCP common stock. But nowhere does it specify what proportion of its damages, if any, are traceable to its purchases of ARCP common stock, as opposed to unspecified swap transactions based on those securities. *See id.* ¶¶ 6-7, 200-201. Eton Park's Related Case Statement is similarly vague. *See* ECF No. 4 at 2. It asserts that the Eton Park entities, "like the class plaintiffs and individual action plaintiffs in the related cases, purchased or acquired ARCP securities and are asserting various claims related to defendants' misrepresentations and omissions regarding ARCP's financial performance during the relevant period." *Id.* The Complaint does not identify the specific date or trade details of any Eton Park transaction, whether in ARCP common stock or swaps, other than alleging that Eton Park acquired ARCP common stock "pursuant or traceable to the [offering materials] related to the May 21, 2014 Stock Offering" and "pursuant to the terms of the Cole Merger Agreement." Compl. ¶ 6.

Counts I through III of the Complaint, asserting claims under Sections 11 and 15 of the Securities Act of 1933, arise out of Eton Park's transactions in ARCP common stock only.[2] *See*

---

[2] Eton Park's counsel has represented to counsel for Defendants that Eton Park's 1933 Act claims do not arise out of swap transactions.

5

*id.* ¶¶ 30, 54, 59. Counts IV through VI, asserting claims under Sections 10(b) and 20(a) of the 1934 Act and New York common law, arise out of Eton Park's transactions in ARCP common stock **and** swaps. *Id*. ¶¶ 210-211, 223, 226, 229.

## ARGUMENT

### I.     The Swap Claims Under the 1934 Act Are Time-Barred

The Swap Claims under the 1934 Act must be dismissed because Eton Park brought them after the statute of limitations expired. Section 10(b) and related Section 20(a) claims must be brought within two years of discovery of the alleged misrepresentations. *See* 28 U.S.C. § 1658(b)(1); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 n.2 (2d Cir. 1993). Eton Park claims to have "discovered" the alleged misrepresentations on October 29, 2014, when ARCP announced non-reliance on previously issued financial statements. *See* Compl. ¶ 47. Eton Park was thus required to file its Section 10(b) and 20(a) claims before October 29, 2016. Yet Eton Park waited until December 5, 2016, to do so.

While Eton Park never sets forth the reason for its delay in asserting these claims, it argues that the filing of the Class Action tolled the statute of limitations pursuant to *American Pipe*. *See id*. ¶ 48. Eton Park is wrong because the Class Action did not toll the limitations period for the Swap Claims.

In *American Pipe*, 414 U.S. at 551-53, and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983), the Supreme Court held that the filing of a class action lawsuit suspends the statute of limitations for class members who choose to opt out and file individual claims.[3] But this tolling applies "[o]nly where there is *complete identity* of the causes of action." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 n.14 (1975) (emphasis added); *see also Crown*, 462

---

[3] *American Pipe* involved intervenors, and *Crown* extended the doctrine to opt-out plaintiffs.

6

U.S. at 355 (Powell, J., concurring) ("It is important to make certain . . . that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit."). As a result, "the tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson*, 421 U.S. at 467.

Courts in this district have limited *American Pipe* tolling to the *precise claims* asserted in a class action. *See, e.g.*, *Bear Stearns*, 995 F. Supp. 2d at 303; *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013) (noting that because pending class action only asserted claims for purchases of stock, not stock options, "the statute of limitations for options holders is running"); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 450 n.25 (S.D.N.Y. 2003) ("*American Pipe* tolling could not save the claims relating to either the 1998 or December 2000 Offerings since the Consolidated Class Action complaint does not assert claims based on either offering."); *Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1091 (S.D.N.Y. 1990) (declining to toll claims based on class action with an ambiguous class definition); *Arneil v. Ramsey*, 414 F. Supp. 334, 340 (S.D.N.Y. 1976) (holding that *American Pipe* tolling did not preserve claims of plaintiffs who were not members of putative class).[4]

---

[4] Other courts have similarly limited *American Pipe* tolling to the cause of action actually asserted in the class action. *See, e.g.*, *In re Copper Antitrust Litig.*, 436 F.3d 782, 796-97 (7th Cir. 2006); *Card v. Duker*, 122 F. App'x 347, 349 (9th Cir. 2005) ("The Supreme Court has . . . not extended tolling due to class litigation beyond *American Pipe*'s narrow allowance for identical causes of action[.]"); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1169 (C.D. Cal. 2011) ("[T]he doctrine of *American Pipe* tolled the statute of limitations only for those Certificates that the named plaintiffs in the prior putative class actions had standing to sue, *i.e.*, those tranches that the *Luther* named plaintiffs had actually purchased."); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 718 (N.D. Ohio 2010) ("Since *Crown, Cork & Seal*, courts interpreting Justice Powell's concurrence have held that only the claims expressly alleged in a previous federal lawsuit are subject to tolling"); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1167 (C.D. Cal. 2010) ("[E]xtending *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring will

In *Bear Stearns*, Judge Sweet rejected the tolling argument that Eton Park relies on here. *See* 995 F. Supp. 2d at 303-04. A putative class action complaint brought claims on behalf of investors who bought Bear Stearns' "publicly traded common stock or other equity securities, or call options of or guaranteed by Bear Stearns, or sold Bear Stearns put options." *Id.* at 296. Later, after the limitations period expired, a new plaintiff, SRM Global Master Fund Limited Partnership ("SRM"), filed a new complaint based on the same underlying alleged misconduct but claiming losses from its purchase of Bear Stearns common stock and "security-based swaps representing . . . shares of Bear Stearns common stock." *Id.* at 297. The court held that *American Pipe* tolling did not apply and that the new claims based on swaps were time-barred because "the Class Action did not involve Swap claims." *Id.* at 303. "Claims based on unregistered derivative transactions, such as SRM's Bear Stearns Swaps, are ***fundamentally different*** from the claims asserted in the Class Action for common stock traded on the New York Stock Exchange." *Id.* (emphasis added).[5] Therefore, the class action did not provide the defendants with "the requisite fair notice" of potential swap claims. *Id.* (citing *American Pipe*, 414 U.S. at 554). Because *American Pipe* tolling applies only "where the same cause of action is asserted," the court dismissed SRM's claims arising from its purchase of swaps. *Id.* at 304.

---

encourage filings made merely to extend the period in which to find a class representative."); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376-LHK, 2010 WL 4117477, at *9 (N.D. Cal. Oct. 19, 2010) ("[T]olling will not apply to class claims that no named Plaintiff had standing to bring."); *Spann v. Cmty. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785, at *6 (N.D. Ill. Mar. 30, 2004) ("[T]he [first-filed] complaint only tolled the statute of limitations as to those claims actually alleged against [defendant] in the [first-filed] action.").

[5] Swaps offer investors a variety of benefits and flexibility, including fewer funding costs, lower margin requirements, and tax benefits, as compared to common stock. *See CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 562 F. Supp. 2d 511, 522 (S.D.N.Y.), *aff'd*, 292 F. App'x 133 (2d Cir. 2008*), and aff'd in part, vacated in part on other grounds, remanded*, 654 F.3d 276 (2d Cir. 2011).

Here, as in *Bear Stearns*, the filing of the Class Action did not toll the statute of limitations on Eton Park's Swap Claims because the Class Action did not include claims based on swaps or derivative transactions. The Class Action alleges claims based on purchases of common stock and stock options, *not* derivative swap transactions. *See supra* pp. 5-6. Eton Park admits that it purchased swaps but asserts that the synthetic securities it bought were "economically equivalent to the purchase of shares of American Realty common stock." Compl. ¶ 6. But *Bear Stearns* properly rejected this reasoning, concluding that a complaint alleging damages from common stock transactions did not put defendants on notice of potential claims by swap holders, much less of the details of swap transactions or the potential damages arising from them. Swap transactions are unregistered contracts involving transactions among private parties. The Class Action gave Defendants no information about the identities or number of potential plaintiffs who transacted in swaps or the amounts involved in their transactions. *See Bear Stearns*, 995 F. Supp. 2d at 303-04. The Class Action here, like the class action in *Bear Stearns*, therefore did not give Defendants the fair notice required by statute "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs" for claims based on swap transactions. *American Pipe*, 414 U.S. at 554.

For these reasons, the Court should dismiss Counts IV and V as time-barred to the extent they assert claims arising from swap transactions.

**II.     The Section 10(b) and 20(a) Claims, and the New York State Common Law Fraud Claim, Are Deficient Under Rule 9(b)**

The Court should dismiss Eton Park's clams under Sections 10(b) and 20(a) and its New York fraud claims for the separate reason that the Complaint fails to identify any purported common stock or swap transaction with the particularity required by Rule 9(b). A Section 10(b) plaintiff must plead "specifics as to the precise dates of purchase, the number of shares acquired,

and the price." *Tannenbaum*, 1984 WL 2374, at *2. *See also Fraser*, 2005 WL 6328596, at *4 (plaintiff fails to satisfy Rule 9(b) where he did not allege "the number of shares acquired, or the consideration given"); *Gross v. Diversified Mortg. Investors*, 431 F. Supp. 1080, 1088 (S.D.N.Y. 1977) ("[T]he plaintiff has failed to plead the nature and amount of securities purchased and the specific dates of the transactions as required by Rule 9(b)."). New York fraud claims brought in federal court must also satisfy Rule 9(b). *See Manning v. Utilities Mutual Ins. Co.*, 254 F.3d 387, 400-01 (2d Cir. 2001) (affirming district court's dismissal of New York fraud claim for failure to plead with sufficient particularity as required by Rule 9(b)). Eton Park merely alleges generally that it "purchased American Realty common stock and/or Swaps," Compl. ¶ 6; *see also id*. (alleging that Eton Park "purchased American Realty Swaps representing millions of shares of American Realty stock"); *supra* pp. 5-6. Accordingly, Eton Park has not pled a purchase or sale of securities with the particularity that Rule 9(b) requires of a Section 10(b) or common law fraud plaintiff.

Because the Complaint fails to plead a violation of Section 10(b), it also fails to plead a violation of Section 20(a), which requires an underlying violation of the 1934 Act. *See*, *e.g.*, *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).

For these additional reasons, the Court should dismiss Counts IV, V, and VI in their entirety.

### III. The Section 15 and 20 Claims Must Be Dismissed Consistent with This Court's August 5 Order

This Court previously dismissed Section 15 and 20 claims against Defendants Schorsch, Kahane, Budko, and Weil in the Class Action. *See* Order at 7 (Aug. 5, 2016), ECF No. 290. The Court ordered that its ruling "shall also apply to the opt-out cases, in which amended complaints were to be filed in accordance with my holdings on these motions." *Id.* Despite this directive,

Eton Park asserts Section 15 claims against Messrs. Schorsch, Kahane, Budko, and Weil, Compl. ¶ 61, and Section 20 claims against Mr. Schorsch, *id*. ¶¶ 216-217. For these reasons, the Court should dismiss Counts III and V in their entirety as to Messrs. Schorsch, Kahane, Budko, and Weil.

### IV. The Complaint Should Be Dismissed for the Reasons Cited in Defendants' Previous Motions to Dismiss

Finally, the Complaint fails to state a claim for the reasons discussed in Defendants' motions to dismiss filed in the Class Action on May 29, 2015 and February 12, 2016. Defendants respectfully acknowledge that the Court resolved those contentions adversely in its November 6, 2015 and August 5, 2016 orders, *see* ECF Nos. 167 and 290, and note them now only to preserve them for reconsideration or appeal.

### CONCLUSION

For these reasons, the Court should dismiss Counts IV and V with prejudice as time-barred to the extent they assert claims arising from swap transactions and, independently, should dismiss Counts IV, V, and VI in their entirety for failure to satisfy Rule 9(b). Finally, the Court should dismiss Counts III and V against Messrs. Schorsch, Weil, Budko, and Kahane for the reasons stated in its August 5, 2016 Order.

| | |
|---|---|
| Dated: February 10, 2017 | Respectfully submitted, |
| |   */s/ Reid M. Figel*<br>Reid M. Figel<br>Rebecca A. Beynon (pro hac vice)<br>Andrew E. Goldsmith<br>Bradley E. Oppenheimer (pro hac vice)<br>Cody Herche<br>Ethan P. Fallon (pro hac vice)<br>KELLOGG, HUBER, HANSEN, TODD,<br>  EVANS & FIGEL, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Telephone: (202) 326-7900<br>Facsimile: (202) 326-7999<br>rfigel@khhte.com<br>rbeynon@khhte.com<br>agoldsmith@khhte.com<br>boppenheimer@khhte.com<br>cherche@khhte.com<br>efallon@khhte.com<br><br>*Attorneys for Defendants AR Capital, LLC, Nicholas S. Schorsch, Edward M. Weil, Peter M. Budko, and William M. Kahane* |